J. H. KROTZ, Appellee, v. GRACE KROTZ, Appellant.

No. 39885.

DECEMBER 13, 1929.

*A. E. Maine,* for appellant.

*Will J. Hayek* and *Walter M. Davis,* for appellee.

WAGNER, J.—In this action, the husband is asking for a divorce because of alleged cruel and inhuman treatment by the wife, and the wife is asking for separate maintenance, because of alleged cruel and inhuman treatment by the husband. Our statutory law provides that a divorce from the bonds of matrimony may be decreed against the offending spouse when he or she is guilty of such inhuman treatment as to endanger the life of the complainant. See Sections 10475 and 10476, Code, 1927.

While separate maintenance may be granted for desertion although the statutory period of two years has not expired (*Harlow v. Harlow,* 150 Iowa 173; *Russell v. Russell,* 150 Iowa 137), yet it is true that, when separate maintenance is asked because of cruel and inhuman treatment by the offending spouse, the standard and degree of proof required are the same as if a divorce were asked upon said ground. *Shors v. Shors,* 133 Iowa 22. In other words, a wife is not entitled to separate maintenance because of cruel and inhuman treatment by her husband unless she would be entitled to a divorce on the same ground, should she ask it.

In order to justify the granting of a divorce on the ground of cruel and inhuman treatment, two things must be established

by a preponderance of the evidence: First, that the offending party is guilty of inhuman treatment; and second, that such inhuman treatment is of such a character as to endanger the life of the complainant. *Hill v. Hill,* 201 Iowa 864; *Massie v. Massie,* 202 Iowa 1311; *Wells v. Wells,* 116 Iowa 59; *Pfannebecker v. Pfannebecker,* 133 Iowa 425. Therefore, the questions confronting us are: Has the appellant wife been guilty of such cruel and inhuman treatment as to endanger the life of her husband? If so, and not otherwise, he is entitled to a divorce. Has the appellee husband been guilty of such cruel and inhuman treatment as to endanger the life of his wife? If so, and not otherwise, she is entitled to separate maintenance.

To set out all of the testimony in the case would be of no benefit to the parties nor to the profession. Therefore we will refer to only so much thereof as we deem necessary to reach our final conclusion. The parties were married March 5, 1923. The plaintiff is the owner of a home in Iowa City, in which they resided; his vocation is that of a clerk; and he receives a salary of $109 per month. They have had little spats, inconsequential in character. Neither of the parties has, at all times, been as considerate of the feelings of the other as is required, to produce and preserve complete domestic felicity. The record reveals no act of physical violence by either upon the other. At times, each refused to converse with the other. As to this matter, it was six of one and half a dozen of the other. The evidence discloses that, on one occasion, the defendant, in conversation with her husband, became angered, and used an epithet. However, it is apparent that little consideration was given to this episode by the husband. The wife is shown to be a good housekeeper. Her health, during the last year or so prior to the trial in the lower court, has not been as good as it was formerly, but the evidence fails to show this condition to be the result of any inhuman treatment by him.

In February, 1928, an uncle of the defendant's, residing in Chicago, whom the defendant had not seen for 18 years, made the parties a visit. The uncle's wife was a cripple, having one limb amputated. Upon his leaving Iowa City, he kindly invited the defendant to visit them. On or about March 8th, the defendant made the journey from Iowa City to the home of her uncle and aunt in Chicago. This was apparently agreeable to the plaintiff. He gave his wife $30 out of his pay check for that month. It is

apparent that it was thought by defendant, and perhaps also by the plaintiff, that a rest and change would be beneficial to the defendant. She remained in Chicago about five weeks, and returned to her home, where she remained for two weeks. During this period, in one of their petty quarrels, as testified to by the defendant, the plaintiff was so indiscreet as to tell his wife that he did not ask her to come back, and if she did not like it, to get out. While there is no corroboration of the defendant as to the making of this statement, it is undenied by the plaintiff. The defendant apparently took him at his word, and returned to the home of her uncle and aunt in Chicago. The husband and wife corresponded by letters in which there is nothing out of the ordinary. The husband's letters are in evidence, and they are endearing in terms. On May 9th, he wrote her, asking her when she intended to come home, and saying that he hoped she would make up her mind to come soon, and everything would be all right again; that he would send the money for her, or come for her in the car. On May 10th he sent her a card, in remembrance of Mothers' Day. In the fore part of July, the defendant borrowed the money from her uncle, and returned to Iowa City. She found the home locked, and was informed that her husband was taking his vacation. After remaining in Iowa City a few days, she returned to the home of her uncle and aunt in Chicago, where she received a postal card from him, mailed from Waterville, Minnesota, where he was spending his vacation. On July 14th, she wrote him for car fare. On July 20th, he wrote her that, at the present time, he had no money to send; that he had paid the insurance, had the car painted, and had paid all bills. In the letter he tells about having taken his vacation, but being called home sooner than he had anticipated. Shortly thereafter, she again wrote him for money to come home, and in reply thereto, on July 27th, he sent her some photographs taken on his vacation, but no letter or money. On August 1st, he commenced this action, and served notice by publication. In their correspondence, the defendant had asked to bring her aunt to Iowa City on a visit, but he failed to make any answer thereto.

There is other testimony in the record, inconsequential in character, but to set it out more fully would unduly extend the length of this opinion. It must be borne in mind that the action of each, as against the other, is founded alone on cruel and in-

human treatment. The husband, on the witness stand, gives as an excuse for not sending his wife money to return home, that she had deserted him. His action is not founded on desertion, nor could it be until the statutory period of two years had expired.

Does this record reveal such cruel and inhuman treatment on the part of the wife as to imperil the life of her husband? Does it reveal such cruel and inhuman treatment on the part of the husband as to imperil the life of the wife? We answer both questions in the negative. We have frequently held that incompatibility of temperament is no ground for divorce. To grant either party the relief asked in this action would be to so construe the statute that the relief asked should be granted for the mere asking. Such is not the law.

The trial court was right in dismissing the defendant's crosspetition for separate maintenance, but was in error in granting plaintiff a divorce. Plaintiff's petition should be dismissed upon its merits, and judgment rendered against him for costs.

That portion of the decree dismissing defendant's cross-petition is affirmed, and that portion granting plaintiff a divorce is reversed.—*Affirmed in part; reversed in part.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.