ELSIE MARY MCCULLA, Appellee, v. LESLIE G. MCCULLA, Appellant.

No. 40544.

MARCH 8, 1932.

Lehmann, Hurlburt & Hossfeld, for appellee.

L. A. Moe and Senneff, Bliss, Witwer & Senneff, for appellant.

KINDIG, J.—Leslie G. McCulla, the defendant-appellant, and Elsie Mary McCulla, the plaintiff-appellee, were married at St. Ansgar on September 27, 1911. After their marriage they lived together as husband and wife until on or about August

7, 1928. As the issue of that marriage, the appellant and appellee have the following living children: James Alexander McCulla, Leslie Granville McCulla, Jr., Robert Ralph McCulla, and Marion Elizabeth McCulla. These children were born, respectively: August 27, 1913, August 6, 1915, September 9, 1918, and August 27, 1920. Several other children, not now living, were born to these parents. Some of the children last referred to were born dead, and at least one other died soon after birth. James Alexander McCulla and Leslie Granville McCulla, Jr., now live with the appellant, or his father and mother; while Robert Ralph McCulla and Marion Elizabeth McCulla now live with, and are supported by, the appellee. Appellee's father is a minister of the gospel. Appellant's father is a farmer.

Following the marriage of appellant and appellee, they lived on a farm. Later they abandoned farming, and appellant occupied different positions in town from time to time. One position thus occupied by appellant was with the Atlantic & Pacific Tea Company. The family moved a great deal from place to place, and at no time had a modern or pretentious home.

Discord arose between this husband and wife, and the present action was commenced by appellee for a divorce from the appellant on the statutory ground of inhuman treatment. At that time the appellant was fifty and the appellee forty years old.

In answer to the petition filed by the appellee, the appellant presented an answer and cross-petition, wherein he asked a divorce from his wife. Subsequently the appellant dismissed the cross-petition. Consequently the cause was tried on appellee's petition and the appellant's answer. A great deal of evidence was taken at the trial. It is very much in conflict. On the whole record, however, it is apparent that the appellee fully sustained her allegation of inhuman treatment, and is entitled to a divorce from the appellant. Accusations were made against appellee by the appellant in his cross-petition. As before explained, the cross-petition was voluntarily dismissed. Upon cross-examination, the appellant admitted that at least part of those accusations set forth in the cross-petition were false. One complaint made by appellant is that the appellee received letters from a Mr. Chambard, a widower over sixty years of age. These letters, appellant maintains, indicate an unduly friendly rela-

tionship between appellee and Mr. Chambard. According to the record, a letter was written by appellee to Mr. Chambard at appellant's request in order that a position might be procured for the latter. Mr. Chambard's first letter, in reply to appellee's communication, was shown by the latter to the appellant. Apparently appellee desired to borrow money from Mr. Chambard in order that she might take a course in "beauty parlor work" at Des Moines. Her purpose was to educate herself in that profession in order that she might start business for herself and thereby support the children. So, appellee wrote some of the letters to Mr. Chambard in order to negotiate the loan.

While it is true that appellee received from Mr. Chambard four or five letters, of which appellant now complains, yet there is no proof that appellee had illicit relationship with Mr. Chambard, or that she was unfaithful to her husband. All these letters were put by appellee in an obvious place in her room. They were shown by her to, and read by, her mother. Knowing that appellant would come to the room and probably find the letters, appellee nevertheless left them unhidden from his view. After learning of all the letters, appellant continued to live with appellee as he had done before, apparently on the theory that she had not been unfaithful to him. Although, as before said, appellee asked Mr. Chambard for money with which to pay her expenses while studying at Des Moines, yet, according to her testimony, after realizing the tone of these letters, she "did not make a loan from him." This money which appellee first thought of borrowing from Mr. Chambard was, in fact, obtained from her own father. She did not attempt to borrow this money from her father in the first instance because it seems he had aided her family financially on many previous occasions. It was embarrassing to her, therefore, it is suggested, to ask her father for additional aid.

Perhaps Mr. Chambard, in the aforesaid letters, expressed undue friendliness to appellee. No proof is furnished, however, that appellee signified a like friendliness for him. A suggestion is made by appellee and her mother that the letters now do not appear as when originally written by Mr. Chambard. Whether the letters have been changed, we do not now decide.

It may be that Mr. Chambard's letters were unduly friendly, and therefore indicate that their author possessed some of

the proclivities of the proverbial foxy grandpa. Nevertheless, there is no proof that appellee herself was unfaithful to the appellant. Throughout her testimony, the appellee emphatically declares that she has at all times been faithful to her husband and never became unduly familiar with Mr. Chambard. Under all the circumstances, then, a further discussion of this record is unnecessary.

There are children involved, and no useful purpose, it appears, would be promoted by exposing the details of this marital strife in an opinion of this court, where the curious may read of the unfortunate circumstances throughout all time to come. Appellee, it is sufficient to say, has produced the evidence required by statute to show that appellant has been guilty of such inhuman treatment as to endanger her life. See Roach v. Roach, 213 Iowa 314; Coulter v. Coulter, 204 Iowa 575; Thompson v. Thompson, 186 Iowa 1066; Cruse v. Cruse, 201 Iowa 810; Shors v. Shors, 133 Iowa 22; Berry v. Berry, 115 Iowa 543.

Appellant makes no complaint concerning the alimony granted or the award of the two minor children to the appellee. Therefore those questions are given no further consideration, for it is apparent the district court was justified in entering the decree made in respect thereto.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.