ANNA BARTLETT, Appellee, v. GEORGE R. BARTLETT, Appellant.

No. 41244.

June 24, 1932.

Ernest R. Mitchell, for appellee.

E. K. Bekman, for appellant.

Kindig, J.—The plaintiff-appellee and the defendant-appellant were married at Chillicothe, Missouri, on December 24, 1895. After their marriage, the appellee and appellant lived together as wife and husband until July 14, 1930, when the latter left the home where the former resided. Two children, a boy and a girl, were born to this couple. These children are named Dale .and Harriett. Both children are now of age, and each of them is married. Following their respective marriages, Dale and Harriett went from the home of appellant and appellee and have since lived in separate abodes. Apparently appellant and appellee lived happily together until about the year 1928, when it is charged that the appellant began a course of inhuman treatment toward the appellee. Because of the alleged cruelty, appellee, on July 15, 1930, commenced this action against the appellant to obtain from him separate maintenance on the ground of inhuman treatment.

In his answer to the petition, the appellant denied the allegations thereof. Then, by way of cross-petition, he asked a divorce from the appellee on the ground of inhuman treatment. There was a trial to the district court on the issues thus raised.

That tribunal granted appellee separate maintenance in the amount of $60 per month, and denied appellant a divorce on his cross-petition.

Three complaints are made by appellant against the judgment and decree entered by the district court. They are: First, that no separate maintenance should have been allowed appellee; second, that in any event, the amount allowed as separate maintenance is excessive; and, third, that a divorce should have been granted appellant on the cross-petition. Consideration now will be given to those propositions in the following order.

I. A careful study of the record constrains us to hold that the district court properly refused appellant a divorce on his cross-petition. He failed to show, even by his own testimony, that appellee's conduct toward him was such as to endanger his life. Moreover, the appellant did not furnish corroborative evidence for his own testimony in that regard. Without such essential proof and necessary corroboration, appellant is not entitled to a divorce. Wallace v. Wallace, 212 Iowa 190; Vogt v. Vogt, 208 Iowa 1329; Hill v. Hill, 201 Iowa 864; Perry v. Perry, 199 Iowa 685; Yetley v. Yetley, 196 Iowa 314; Nelson v. Nelson, 208 Iowa 713; Walker v. Walker, 205 Iowa 395.

II. Therefore, the next question to be considered is: Did the district court, under the record, properly grant appellee separate maintenance?

Separate maintenance without a divorce in this state is allowed independent of statute. Kalde v. Kalde, 207 Iowa 121; Davies Dry Goods Co. v. Retherford, 195 Iowa 635; Shipley v. Shipley, 187 Iowa 1295. Although the statute does not authorize an action for separate maintenance without a divorce, this court has recognized the right of one spouse to bring such proceeding against the other. The basis upon which the right to obtain separate maintenance without a divorce is founded, may be ascertained in Graves v. Graves, 36 Iowa 310. There this court said, reading on pages 312 and 313:

"It is true, beyond controversy, that the great weight and number of the English authorities deny such jurisdiction. And it is, perhaps, also true that the number and possibly the preponderance of the American authorities are in accord with the

English. But there are well-considered cases and authorities of great weight which affirm the jurisdiction. Judge Story says, of these latter, that 'there is so much good sense and reason in the doctrine that it might be wished it were generally adopted.' * * * That a husband is bound, both in law and in equity, for the support and maintenance of his wife is a proposition hitherto and now undisputed. * * * Here then is a plain legal duty of the husband for the violation of which no adequate remedy, even with a multiplicity of suits, can be had, except in a court of equity. Upon the ground of avoiding a multiplicity of suits, or on the ground that no adequate remedy can be had at law, a court of equity may properly base its jurisdiction in such cases. And, under our law, we do not see, since the husband owes this obligation of maintenance to the wife, as well as to the public, why she may not, independent of any other ground, maintain this action against him.''

Since the Graves case (36 Iowa 310), this court upon many occasions has sustained the right of a wife, without obtaining a divorce from her husband, to maintain against him a suit in equity for separate maintenance. Whitcomb v. Whitcomb, 46 Iowa 437; Finn v. Finn, 62 Iowa 482; Farber v. Farber, 64 Iowa 362; Platner v. Platner, 66 Iowa 378; Simpson v. Simpson, 91 Iowa 235; Shors v. Shors, 133 Iowa 22; Conlin v. Conlin, 163 Iowa 420; Leonard v. Leonard, 174 Iowa 734; Naumann v. Naumann, 182 Iowa 420; Shipley v. Shipley (187 Iowa 1295), supra; Kalde v. Kalde (207 Iowa 121), supra; Krotz v. Krotz, 209 Iowa 433.

Before a wife, however, may obtain such separate maintenance on the ground of inhuman treatment, she must sustain her petition therefor by evidence which would entitle her to a divorce on that ground were a proper petition asking that relief filed against her husband. Upon this subject, it was said in Krotz v. Krotz (209 Iowa 433), supra, reading on page 434:

''While separate maintenance may be granted for desertion although the statutory period of two years has not expired (Harlow v. Harlow, 150 Iowa 173; Russell v. Russell, 150 Iowa 137), yet it is true that, when separate maintenance is asked because of cruel and inhuman treatment by the offending spouse, the standard and degree of proof required are the same as if a

divorce were asked upon said ground. Shors v. Shors, 133 Iowa 22. In other words, a wife is not entitled to separate maintenance because of cruel and inhuman treatment by her husband unless she would be entitled to a divorce on the same ground, should she ask it.''

To the same effect see: Shors v. Shors (133 Iowa 22), supra; Leonard v. Leonard (174 Iowa 734), supra; Naumann v. Naumann (182 Iowa 420), supra.

Section 10475 of the 1927 Code, so far as material, provides:

''Divorces from the bonds of matrimony may be decreed against the husband for the following causes: * * *
''5. When he is guilty of such inhuman treatment as to endanger the life of his wife.''

When applying that statute to an action for separate maintenance, this court said in Krotz v. Krotz (209 Iowa 433), supra, reading on page 435:

''Has the appellee husband been guilty of such cruel and inhuman treatment as to endanger the life of his wife? If so, and not otherwise, she is entitled to separate maintenance.''

Consequently, if the district court properly allowed appellee separate maintenance from the appellant, it was because he imposed upon her such inhuman treatment as to endanger her life. Does the record show such treatment? That is the primary question here.

As before explained, the appellee and appellant were married at Chillicothe, Missouri, where they lived for a while. The appellant was a Milwaukee Railroad employee, first in the bridge building department, and later in the train service. While in the train service, the appellant was first a freight brakeman and later a freight conductor. His work made it necessary for the family to leave Chillicothe, Missouri, and move to Sigourney, Iowa. From there, they later went to Marion, and then after moving from Marion the family finally located in Ottumwa. At the time of the trial, in March, 1931, the appellee was 58 and the appellant 60 years of age. They had lived together in Ottumwa since 1903. It appears that the

family never owned a home. Their house furnishings were modest, but apparently comfortable. Appellee makes no complaint against her husband's conduct toward, or his treatment of, her until about the year 1928.

During that year appellee contends that her husband became infatuated with another woman. Thereafter appellant's conduct toward the appellee showed a marked change. He became cruel in many ways. According to appellee's testimony, the appellant cursed and swore at her in the presence of the children. When in from his train service, he would not stay home at night. Appellant was continually in the company of his alleged affinity, according to appellee. Upon many occasions appellee remonstrated with her husband, but he paid no attention to her wishes. It is said by appellee that when she was thus trying to persuade her husband to stay away from the other woman, he became abusive. His abuse upon one occasion amounted to his striking appellee and knocking her down. She did not recover from these blows for two or three days. On other occasions appellant struck appellee. Formerly appellant remained at home nights with his family. He seemed to enjoy the home and the company of his wife. But it is said after the other woman came into his life, he entirely changed. As soon as appellant came in from his train trips, he would immediately go to the home of the other woman and leave his wife alone in the family home. Repeatedly the appellant told appellee to obtain a divorce.

In the testimony of the appellee may be found other acts of cruelty imposed upon her by the appellant. Under the entire record, it is apparent that according to the appellee's evidence the appellant was guilty of inhuman treatment toward his wife. This inhuman treatment endangered her life. Appellee, as a matter of fact, was afraid of appellant and feared he would do violence to her. Moreover, appellee worried continually and suffered humiliation and shame because of appellant's conduct toward the other woman. Also appellee became extremely nervous and failed in health. Her health became dangerously impaired, and it clearly appears that her life was in jeopardy. Furthermore, the testimony of the appellee is fully corroborated by other witnesses. Both the son and daughter testified in appellee's behalf, and neighbors also gave evidence for her. Not

only is appellee's testimony thus corroborated by her witnesses, but also it is corroborated by the testimony of appellant himself. While it is true that appellant contradicted some of the charges made against him by the appellee, yet he did make material admissions. Consequently the record would support a divorce, were appellee asking one from the appellant. McCulla v. McCulla, 213 Iowa 1348; Roach v. Roach, 213 Iowa 314; Coulter v. Coulter, 204 Iowa 575; Thompson v. Thompson, 186 Iowa 1066; Cruse v. Cruse, 201 Iowa 810; Berry v. Berry, 115 Iowa 543; Shors v. Shors (133 Iowa 22), supra.

If, then, as above found, there is sufficient evidence on appellee's part to support a decree of divorce from the appellant were she asking one, likewise therefore the evidence is adequate to sustain appellee's application for separate maintenance under the rule above announced. Hence, the district court properly demanded that the appellant pay appellee separate maintenance.

III. But it is said by appellant that the separate maintenance actually allowed by the district court is excessive. The amount of separate maintenance which the district court required the appellant to pay appellee is $60 per month.

According to the record, appellant's income during the last three years has been in excess of $1,800 per year. During that period, his actual and necessary living and other expenses have aggregated about $58 per month. So, if $58 is subtracted from $150, a low monthly average of appellant's income, the amount remaining is $92 per month. Resultantly, if appellee receives $60 per month, the net amount of the monthly income left for appellant, after paying all his expenses and the sum due appellee as separate maintenance, would be $32. Assuming that the matters which form the basis for the allowance of alimony should, by analogy, fix the amount of separate maintenance, it is manifest that said sum specified by the district court is not exorbitant. Appellee has no money of her own and no way in which to support herself, except by the toil of her own hands. She always has been a housewife, and is approximately 60 years old now. Therefore, it would be rather difficult for her to earn a living.

It was said in Fitch v. Fitch, 207 Iowa 1193, reading on page 1195:

"Numerous elements enter into the problem of fixing alimony. The wife's necessities are not alone the criterion, because the husband's ability to pay, as well as other contingencies, must enter into the equation."

These principles have been fully considered in the case at bar and obviously, under all the circumstances, the amount fixed by the district court is proper.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.