50 P.(2d) 264

## CHAVEZ v. CHAVEZ.

### No. 4023.

Supreme Court of New Mexico.

Oct. 9, 1935.

J. H. Paxton, of Las Cruces, for appellant.

Thomas B. Rapkoch, of Las Cruces, for appellee.

ZINN, Justice.

Plaintiff (appellee) brought suit for divorce alleging desertion and nonsupport. Plaintiff prayed for suit money, alimony, and a division of the community property. Defendant (appellant) answered, denying desertion, alleging that he has been ready and willing to support and live with the plaintiff, countercharging plaintiff with desertion and affirmatively charging plaintiff with "living with one Reuben Garcia, an unmarried man." Defendant denied that there was any community property. Plaintiff in her reply denied the allegations of defendant's affirmative defense. Plaintiff charged that defendant deserted her on July 22, 1933. Defendant charged that plaintiff deserted him on July 25, 1933.

The case was tried on February 10, 1934. The court found the major issue of abandonment in favor of plaintiff.

The court also found that there was no community property, but that the separate estate of defendant amounted to $8,600. The court found that plaintiff is twenty-four years of age, and that the defendant is between seventy and eighty years of age, "decrepit and in his dotage." The plaintiff had requested an award of $4,300 as permanent alimony, to be paid by the defendant out of his separate estate. This was denied. The court refused to find that the plaintiff was unfaithful to the defendant with one Reuben Garcia.

The district court entered its decree, awarding plaintiff an absolute divorce, ordering the defendant to pay plaintiff $30 per month as alimony. From this decree, the defendant prosecutes this appeal. The plaintiff files a cross-appeal from the $30 per month alimony award, contending she should have a lump sum award of $4,300.

It is contended by defendant that the allegation in his answer to the effect that the plaintiff, ever since her separation from him, "has continually since lived and is still now living with one Reuben Garcia, an unmarried man," is, when proved, a bar to plaintiff's suit for divorce, on the theory of recrimination. Defendant contends that the charge and proof conclusively show adultery on the part of plaintiff.

The defendant placed on the witness stand Consuela Ramos, a thirteen year old girl, who testified that one morning between the hour of 7 and 8 she found plaintiff and Reuben Garcia lying together on a cot covered up. She could not testify as to the state of their dress. This transpired subsequent to the separation of plaintiff and defendant. This was denied by plaintiff. The defendant had other witnesses testifying as to familiarities between plaintiff and Reuben Garcia.

It was the province of the court to believe or disbelieve the witnesses testifying before him. He could have accepted the testimony of plaintiff, and rejected that of Consuela Ramos. If we could assume that the trial court's refusal to find that the plaintiff was unfaithful to the defendant

with Reuben Garcia, as requested by defendant, was based on the evidence of the plaintiff, which the court believed, and disbelieved the testimony of the witnesses for the defendant, we would be content. However, we are confronted with a more difficult problem.

Plaintiff objected to the introduction of any testimony relating to her alleged actions with Reuben Garcia. The court, though considering the evidence admissible within the pleadings, did not consider it material. The court permitted the evidence to go in, and refused to sustain a motion to strike, but stated: "I don't see the materiality of it—this all happened after the separation."

Apparently the court was under the impression that adultery, if adultery of plaintiff was proven, and which we are not called on to decide, may not be set up as a recriminatory defense, after the desertion or separation, by the deserting spouse. In this the court erred.

█ Adultery is generally available as a recriminatory charge in all cases. 9 R. C. L. 390. It may be set up as a recriminatory defense by the deserting spouse. The rule is founded upon the equitable theory that whoever appeals to a court for relief must do so with clean hands and with an apparently clear conscience, and one who has committed adultery, though deserted by her lawful spouse, has not a clear conscience and cannot seek the favor of the court.

We quote from a number of decisions, where this question has been considered, and which are applicable here.

"Peculiarly apposite to the present case is the decision in Tracey v. Tracey (N. J. Ch.) 43 A. 713, where the following language is used by Vice Chancellor Grey of New Jersey: 'All the cases, however, declare that if the complainant, in proving his case, discloses his own guilt, the court will refuse him relief, even if his misconduct be not pleaded against him. * * * The complainant cannot exhibit to the court his own breach of his marriage vows and successfully ask for relief because of the defendant's failure in marital duty. He comes into the court with unclean hands and cannot rightfully ask its aid. In the case before me, the complainant's breach of his marriage vows appears in his own proofs, by his own oath. The bill should be dismissed.'" Green v. Green, 125 Md. 141, 93 A. 400, 402, L. R. A. 1915E, 972, Ann. Cas. 1917A, 175.

In L. R. A. 1915E, at page 972, we find a note covering cases involving the question before us. We take liberty in quoting at length from the leading case of Redington v. Redington, 2 Colo. App. 8, 29 P. 811, where a wife's adultery after her husband's desertion had ripened into a right of action for divorce was held a good recriminatory defense to her action for divorce upon the ground of the desertion.

"It is a rule recognized in all courts, and applicable to all classes of actions,

that every suitor who seeks redress at the hands of a court should come unfettered and unsullied by faults and wrongs of his own commission against the contending party. This principle has become aphorized in the law as 'clean hands.' It is plainly and palpably violated and infringed whenever a litigant who prays a divorce has been guilty of any act which, under the statute, would furnish the defendant a cause of action as against him. This alone ought to be sufficient to defeat the plaintiff's right of recovery, for she was guilty of a great offense against the marital obligation before she filed her bill. It has never been sufficient, even under the English authorities, to respond that, 'Even though this be true, you first sinned, and I may therefore recover.' The law left them where it found them. This conclusion finds strong support in the consideration that under the statute every offense which is thereby made a ground for divorce is of equal force and validity, and, when presented and proved, entitles the litigant to identically the same relief. It is therefore impossible for the courts in determining the obligations of the marriage contract to hold that there is any difference in the legal character of the breaches when their action is invoked upon any one of them. Whatever may be the ethical considerations, and the gravity of the offenses laid in a moral point of view, they are of no value in this respect. Conant v. Conant, 10 Cal. [249], 250 [70 Am. Dec. 717]; Hoff v. Hoff, 48 Mich. 281, 12 N. W. 160; Nagel v. Nagel, 12 Mo. 53; Johns v. Johns, 29 Ga. 718; Shackett v. Shackett, 49 Vt. 195; Ribet v. Ribet, 39 Ala. 348; Adams v. Adams, 17 N. J. Eq. 324; Handy v. Handy, 124 Mass. 394. Under the law as established by these authorities, on the coming in of the verdict establishing the desertion by the husband, the court being advised by the wife's admission that she had been guilty of adultery, should have dismissed both bill and cross bill, and left the parties bound by the tie which they had severally dishonored." Redington v. Redington, 2 Colo. App. 8, 29 P. 811, at page 812.

If the plaintiff, either while she was carrying on this suit, or before she had commenced this suit, but after having been abandoned and deserted by the husband whom the court found to be "decrepit and in his dotage," commenced an adulterous intercourse on her own part with one Reuben Garcia, or any other person, which we do not decide, nor are we called upon to decide in the instant case, such adultery would be a bar to the plaintiff's suit, if discovered at any time before decree entered. It appears that the trial court should consider the same. If the testimony of defendant's witnesses be not believed by the court, that is an entirely different matter. The court should, however, permit the testimony offered by defendant to go in, and be considered in the light of what we here say.

The plaintiff's plea of surprise cannot be considered. The allegation that "plaintiff is living with one Reuben Garcia,

an unmarried man," sufficiently apprised her of what defendant intended to prove. If plaintiff's actions with Reuben Garcia are without fault, and she has denied impropriety, she will not suffer by permitting the court to consider this question, not as immaterial, but as material, and if the defendant prove his charge of unfaithfulness to be true to the satisfaction of the trial court, such proof of adultery would bar her suit.

" 'It is,' says Mr. Bishop, 'a bar to any suit to dissolve a valid marriage, or to separate the parties from bed and board, that either before or after the complaint of delictum transpired the plaintiff himself did what, whether of the like offending or any other, was cause for a divorce of either sort.' 2 Bishop, Marriage, Div. & Sep. § 365. This is for the obvious reason that the law forbids redress to the plaintiff who is in equal default with the defendant, and helps those who obey it, and not those who violate it. The plaintiff's conduct since defendant's alleged desertion of her is a cause for divorce, and therefore a defense to this suit. It does not matter that the defendant made default." Earle v. Earle, 43 Or. 293, 72 P. 976.

The cause will be reversed and remanded, that a new trial be had, the issues reframed, and retried in accordance with what we have here said.

It is so ordered.

SADLER, C. J., and BRICE, J., concur.

HUDSPETH, Justice (specially concurring).

I am unable to concur in the holding of the majority that recrimination is a defense to divorce in this state. It is, I believe, universally recognized that the Legislature has power to prescribe the causes affording grounds for divorce, and that where a statutory ground is shown to exist, the court has no discretionary right to deny a divorce.

The material part of our divorce law is now embodied in chapter 54 of the Laws of 1933, which reads as follows:

"Section 1. That Section 22, Chapter 62, Laws of 1901, (Section 68-501 of 1929, New Mexico Statutes Annotated) be and the same is hereby amended to read as follows:

" '68-501. Grounds for Divorce. The several District Courts within and for the State of New Mexico are hereby vested with full power and authority to decree divorces from the bonds of matrimony for any of the following causes:

"1. Abandonment.

"2. Adultery.

"3. Impotency.

"4. When the wife, at the time of the marriage, was pregnant by another than her husband—said husband having been ignorant thereof.

"5. Cruel and inhuman treatment.

"6. Neglect on the part of the husband to support the wife, according to his means, station in life and ability.

"7. Habitual drunkenness.

"8. Incompatibility.

"9. The conviction for a felony, and imprisonment therefor, in the penitentiary, subsequent to the marriage."

No reference is made to recrimination in the statute, and the rule is stated in 19 C. J. 94, note c, as follows: "Where divorce statutes make no reference to recrimination the court will assume that the legislature intended to adopt the general principles which had governed the ecclesiastical courts in England in respect thereto, so far as those principles are applicable and reasonable. Morrison v. Morrison, 142 Mass. 361, 8 N. E. 59, 56 Am. Rep. 688; Robbins v. Robbins, 140 Mass. 528, 5 N. E. 837, 54 Am. Rep. 488." Those principles are not applicable or reasonable where incompatibility is ground for divorce. This ground was added by the 1933 amendment.

This statute is to be construed as a whole. If recrimination is a good defense to a suit for divorce on one statutory ground, it should be equally effective as a defense to a suit on any ground listed in the statute. "Recrimination" is well defined in 29 Mich. Law Review, p. 232—7:

"Divorce—Recrimination as a Defense. —'If both parties have a right to divorce, neither party has.' This judicial pronouncement, paradoxical and puzzling as it may seem, at least to the lay mind, nevertheless embodies the kernel of the doctrine of recrimination as it is applied in divorce cases by modern courts. One party seeks divorce and proves beyond doubt that he or she is entitled to relief. But, if it is found that the complaining party too, is guilty of conduct for which a divorce may be granted, the court turns a deaf ear to both. For, in the oft quoted words of Chancellor Wallworth, the parties in that case are suitable and proper companions for each other. The law refuses to destroy their marriage relationship under these conditions despite the fact that the double offense renders slight the chance that the marriage will be of further social value. The venture is left a derelict for the parties to salvage as best they can.

"A doctrine whose application leads to such results may well be scrutinized. Approached from the historical standpoint we find it at least possessed of the sanction of time. Its origins are ancient. It appeared in the Mosaic Code. Sir William Scott, afterward Lord Stowell, explained the rule and its early application in Forster v. Forster (1790) and Proctor v. Proctor (1819), cases which are often referred to by writers on the subject. He found its source in the rule of compensatio criminum of Roman law. This rule, the effect of which was that equal offenses cancelled each other, was applied by the Roman magistrates when the husband interposed the wife's adultery as a defense to her application for dower. Its application allowed the wife to defeat this defense by showing the husband's own adulteries. The canon law adopted this doctrine and applied it in actions for judicial separation. Its application, however, did not receive the wholehearted approbation of the judges and in this respect none are more enlightening

than Sir William Scott himself. Hardly two years on the bench when he decided Forster v. Forster, he had no doubt that recrimination was a 'good moral and social doctrine.' Twenty-nine years later, at the mellow age of seventy-four and during his last year as a consistory judge, he regretted that he was obliged to adhere to the rule. The return to cohabitation, which the canon law presumed to take place when the court refused a separation, Scott knew did not take place. He felt, too, the danger of spurious offspring and the difficulties of separate debts, and wished that a competent authority would provide another rule. These fears did not prevent the continued application of the doctrine, however, nor its infiltration from the ecclesiastical law into our own."

If the recrimination doctrine prevails, "incompatibility" would be a defense to a suit for divorce brought upon the ground of "incompatibility." Such a theory would hardly be suggested by any one who understands the meaning of the word.

"Incompatibility" is defined by the Century Dictionary as: "The quality or condition of being incompatible; incongruity; irreconcilableness." And Webster's New International Dictionary: "Quality or state of being incompatible; inconsistency; * * * incapable of harmonious combination; incongruous; as, incompatible colors; incapable of harmonious association or acting in accord; disagreeing; as incompatible persons. * * *" Pope's Legal Definitions gives the following: "Incompatibility.

'The elements and qualities which may create incompatibility between persons elude exact definition, so varied are the circumstances and so dependent is such a state of feeling upon education, habits of thought and peculiarities of character. It must be assumed that the parties understood the wide signification of the word and used it understandingly (in a contract for employment that could be annulled for "dishonesty, incapacity, incompatibility or breach of the agreement") * * * The word is not a word of art, or of technical or local meaning, or having two distinct meanings, circumstances which have been held to justify parol evidence of the meaning of a word used in a written contract. (Greenl. Ev. § 295.) The largeness of the meaning of the term * * * is no reason for limiting its interpretation, nor does it furnish any reason for permitting parol evidence in explanation.' Gray v. Shepard, 147 N. Y. [177], 180 [41 N. E. 500]."

The courts in states where incompatibility is not a ground for divorce have thrown light on the meaning of the word:

Esenwein v. Esenwein, 105 Pa. Super. 261, 161 A. 425, 426: "These people did not get along well together, but incompatibility of temper is not a ground for divorce."

Morris v. Morris, 108 Misc. 228, 177 N. Y. S. 600, 601: "Mere disagreements, lack of domestic harmony, or incompatibility of temper do not furnish the basis for relief. Umbach v. Umbach, 183 App. Div. 495, 171 N. Y. S. 138."

Umbach v. Umbach, 183 App. Div. 495, 171 N. Y. S. 138: "Squabbles, wordy altercations, unkind and exasperating, or even insulting, words, used in the heat of passion, fanned by bickerings, do not constitute cruel and inhuman treatment. Unfortunately for our weak nature, these things are very human. Nor do these things constitute conduct which renders it unsafe or improper to live together. Incompatibility of temper is not a cause either for divorce or separation under our law. The view of this court on this subject, which we still entertain, has been recently set forth in Donohue v. Donohue, 180 App. Div. 561, 167 N. Y. S. 715."

Sachse v. Sachse, 107 N. J. Eq. 41, 151 A. 744, 747: "It is undoubtedly true that there was more or less wrangling between the parties, generally caused by incompatibility of temper, and for that reason they did not live as happily together as they should have done; still no cause of extreme cruelty is proved."

Krotz v. Krotz, 209 Iowa, 433, 228 N. W. 30, 32: "Does this record reveal such cruel and inhuman treatment on the part of the wife as to imperil the life of her husband? Does it reveal such cruel and inhuman treatment on the part of the husband as to imperil the life of the wife? We answer both questions in the negative. We have frequently held that incompatibility of temperament is no ground for divorce. To grant either party the relief asked in this action would be to so construe the statute that the relief asked should be granted for the mere asking; such is not the law."

Hengen v. Hengen, 85 Or. 155, 166 P. 525, 528: "It was earnestly argued at the hearing that the parties were irreconcilable, that it was impossible for them to live together in peace, and that the defendant ought to take the $11,000 and let the decree stand. Incompatibility of temper, however, is not a ground for divorce under the laws of this state, and to approve the money feature of this decree would be to say, in effect, that a divorce may be purchased by a party desiring it whether he is at fault or not. As we have shown by his own testimony, the plaintiff is largely deserving of censure in his conduct towards the defendant, and is therefore not entitled to relief in a court of conscience."

When the Legislature wrote this additional ground of divorce into our law, they intended to afford a remedy for a spouse incompatible with his or her mate, and that too without regard to the wishes of the other spouse, or the fact that the other spouse might have a ground for divorce. It is a recognition of the fact that in many cases both spouses are to blame, as said in Stiles v. Stiles, 224 Ky. 526, 6 S.W.(2d) 679, 680: "If the wife were required to be entirely without fault before she could ask a support from her husband, it would work a great hardship upon the wife, and give an undue advantage to the equally faulty hus-

band, since divorces are generally the result of imperfections of character of both husband and wife."

The case of Oertel v. Oertel, 145 Md. 177, 125 A. 545, 546, sets forth a state of facts which falls within the class for which a remedy is provided by the "incompatibility" amendment: "The case records the effort of one party to an unhappy marriage to free herself from the bonds of matrimony which link together two people neither of whom appears to be wicked or vicious, but who are, according to their testimony, temperamentally unsuited to live together. Temperamental incompatibility, however, is not a ground for divorce in this state, and no matter how desirable it may be as a moral abstraction that two people should be divorced who cannot live happily together and no matter how injurious it may be to them or to either of them to continue to live together subjected to bonds which have become galling, nevertheless a divorce cannot be granted to either of them unless for causes recognized by the state speaking through the Legislature as sufficient for that purpose, and under the laws of this state a divorce a mensa et thoro will be decreed only where the established facts of the case show cruelty of treatment, excessively vicious conduct, abandonment, or desertion."

The responsibility of determining the wisdom or righteousness of this act is not ours. The legislative branch of the state has made it law. Its meaning is plain, and, to my mind, recrimination is not available as a defense under it.

However, I concur in the reversal of the judgment of the district court for the reason that the trial court refused to consider evidence, which tended to prove that appellee was living with another man, in connection with the allowance of alimony—apparently the real bone of contention in the case. The appellee has no child. If she is living with another man the appellant should not be required to support her, or contribute to her support, out of his separate property.

BICKLEY, Justice (concurring specially).

Recrimination is not a defense of substantive law. There is no mention of it in our statutes. It arises as a matter of procedure in courts of equity and is based on the "clean hands" maxim.

This maxim is not of universal application even in cases entirely distinct from divorce proceedings. In 21 C. J., "Equity," § 176, the "conduct of adversary" is considered as a limitation on the maxim. It is there said: "The conduct of the other party may be sufficient to prevent the maxim from being applied, as where plaintiff's misconduct toward defendant was invited by him, or waived. The courts incline to measure the comparative guilt of the respective parties and extend relief to one who is comparatively innocent. This sit-

uation has usually been presented in cases in which the wrongful conduct of the party seeking relief has arisen through undue influence arising from a trust relationship of the parties, through mental weakness, threats, fear, or oppression and like circumstances which have been regarded as sufficient measurably to excuse the wrongful conduct involved."

In the article on "Divorce" in 19 C. J. § 219, it is said that the doctrine of recrimination rests upon the equitable maxim that he who comes into equity must come with clean hands, and then says: "But the rule is not infrequently relaxed on grounds of public policy or the peculiar exigencies of the case, and comparative rectitude is considered."

In 13 C. J., "Contracts," § 441, it is said: "Although the parties are in pari delicto, yet the court may interfere and grant relief at the suit of one (of) them where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with defendant. But here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served."

The courts which refuse to relax the "clean hands" rule, in divorce cases, overlook the fact that marriage is not a mere contract but a civil institution. Divorce statutes are not designed solely for the relief of individual litigants, but partake of the state's paramount interest in the dissolution of a particular marriage status. The interest of society and public morality may be furthered by divorce even though both parties are at fault, if there is no possibility of their reconciliation. It may well be doubted whether the sum total of the public morality is increased by refusing a divorce under such circumstances. The result of refusing the divorce may be that each will become offenders against public morality where there was only one offender before. Divorces are granted for reasons of policy and not as a punishment to one party or a favor to another. Certainly, if reasons of policy require a divorce when one party alone is guilty of a material offense, those reasons are doubled when both are guilty. The home is doubly broken. The bars to cohabitation are doubled and a situation arises to which divorce is the only practical solution. It is a controversial question whether granting or refusing the divorce will be the greater deterrent for the prevention of immorality. The canon law concept of marriage as a sacrament, indissoluble save at the hand of God, brought forth as a by-product the rule of recrimination, and answers the question by refusing a divorce. The modern theory of divorce demands of the chancellor the exercise of a judicial discretion to grant a divorce under some circumstances even though the petitioner himself had committed a fault amounting to a ground for divorce.

By section 68-501, Comp. Stats. 1929: "The several district courts within and for the state of New Mexico are hereby vested with full power and authority to decree divorces from the bonds of matrimony for any of the following causes."

The New Mexico courts, exercising the jurisdiction thus reposed, employ their equity powers. In Nelson on Divorce and Separation, § 19, it is said: "In the absence of a statute no American court has jurisdiction of divorce. Such jurisdiction does not inhere in courts of equity or common law, because neither had jurisdiction of divorce when we derived our law from England."

In Hodges v. Hodges, 22 N. M. 192, 159 P. 1007, it was decided: "4. The ecclesiastical law of England in regard to marriage and divorce has never been adopted in its entirety in America. Only such portions thereof as have been formulated into statutes have been adopted, and such statutes form the sole basis of jurisdiction of the courts in this state. There is no power vested by statute in the courts of this state to award a limited divorce, or a legal separation, and hence no such power exists." This was later reiterated in Ex parte Sedillo, 34 N. M. 98, 278 P. 202, 204, where we said: "The ecclesiastical law of England is no part of the common law of New Mexico, and the jurisdiction over matters of this kind is statutory."

In the case of Redington v. Redington, 2 Colo. App. 8, 29 P. 811, relied upon by Brother ZINN in the proposed opinion, the court said, with reference to the law governing recrimination: "In the hopeless conflict among the authorities, both English and American * * * we must follow what seems to be the current of the main stream of judicial determination, influenced perhaps by our own judgment of what the law should be in such cases."

It is not safe to rely upon a statement that the weight of authority is in favor of *complete* recrimination as a defense. Some of the decisions have been affected by statutes in the various jurisdictions. Even where statutes make recrimination a defense, the statutes have put a limitation upon the doctrine, as, for instance: "When the offence shall appear to have been committed by procurement or with the connivance of the plaintiff." See reference to Wisconsin statute in Nelson on Divorce, § 432.

In the same section Nelson says: "Where a statute provides that divorces may be granted to 'the parties injured', some importance is attached to this expression. It is held that one who has deserted without cause cannot obtain a divorce for a *subsequent* adultery of the other, because the desertion conduced the offense complained of, and therefore the deserter is not an injured party. Citing cases. 'No husband', it is said, 'can

have the bonds of matrimony dissolved by reason of the adultery of the wife committed through his allowance, his exposure of her to lewd company, or brought about by the husband's default in any of the essential duties of the married life, or supervenient on his separation without just cause.' "

The following are a few illustrations of statutes making recrimination a defense:

Idaho Revised Statutes 1887, § 2464: "Divorces must be denied upon showing: 1. Collusion; or 2. Condonation; or 3. Recrimination; or 4. Limitation and lapse of time."

Section 2466 is as follows: "Recrimination is a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce." See Crawford & Moses' Digest (Ark.) § 3507 to similar effect. See, also, Wisconsin Statutes 1929, § 247.10.

It has been suggested in conference that statutes of this character are merely an attempt by the Legislature to express their view of certain common-law principles which are applicable to the trial of divorce cases. But as was said in Hodges v. Hodges, the principles of ecclesiastical law have not been imported into our New Mexico jurisprudence.

My argument is that since the Legislature has not made recrimination a defense amounting to a bar to a decree of divorce where a ground of divorce exists, and the doctrine of recrimination has never been declared in New Mexico by our courts of last resort, and we now having a case of first impression before us, we should not assume to declare for the state a policy so strict as that proposed by the majority. The case of Green v. Green, 125 Md. 141, 93 A. 400, Ann. Cas. 1917A, 175, L. R. A. 1915E, 972, and the annotation following it, shows some of the variations of statement as to how far the doctrine of recrimination will be applied. For instance, the Texas courts say: "Recrimination as a defense is available *only* where the defendant's acts relied on were induced by or in retaliation of the plaintiff's conduct and were of the same general character and such as are reasonably calculated to provoke the defendant's misconduct." See Schouler Marriage, Divorce and Domestic Relations, § 1724.

The Legislatures of Oklahoma and Kansas have vested their courts with a discretion with respect to the application of the doctrine of recrimination. The courts of Washington seem to have assumed discretionary power independent of statute. Thus a guilty petitioner may be given a decree if the courts believe the parties can no longer live together. One case indicated that the Michigan courts might develop a discretionary power without statutory aid. However, this intimation was later refuted. A number of states have limited the doctrine of recrimination by the principle of "comparative recti-

tude"; i. e., if the parties are not in equal guilt, a decree is given to the one who has committed the lesser offense.

It does not seem to me that an act of the Legislature is necessary to enable courts of equity to apply with judicial discretion the maxims of equity including the "clean hands" maxim, any more than it is necessary for the court to find legislative authorization to make use of the doctrine of recrimination, where the court feels warranted in employing it. Where our Legislature has enacted what was intended to be a complete code on the subject of divorce and has omitted making it the imperative duty of the chancellor to deny a divorce upon the showing of recrimination, the chancellor as a representative of the rights and interests of the general public existing in divorce cases has power to go beyond the pleadings of the husband and wife and render such decree as should be proper for the preservation of such rights and interests of the public. In the exercise of such power the extent to which the doctrine of recrimination will be applied is within the judicial judgment and discretion. Decker v. Decker, 193 Ill. 285, 61 N. E. 1108, 86 Am. St. Rep. 325. It would be strange if the chancellor would have no power to grant a divorce where the parties can no longer live together because through faults and misconduct of each they had become mutually repelling, discordant, and irreconcilable and at the same time have power

to decree divorce on the ground of "incompatibility."

Our Legislature has said that the district courts are vested with full power and authority to decree divorces for any of the causes enumerated in the statute. In the case at bar, the court found that the defendant willfully and without cause deserted and abandoned the plaintiff, and still continues so to willfully and without cause desert and abandon the plaintiff and to live separate and apart from her, against her will and without her consent. Also that the defendant has not supported plaintiff according to his means, station in life and ability, and that the plaintiff is without means of support, and also that during all the time plaintiff and defendant lived together as husband and wife, plaintiff demeaned herself properly as the wife of the defendant and at all times performed all of her duties as the wife of the defendant and at all times treated him with love and affection.

When the defendant offered testimony for the purpose of proving that the plaintiff, *subsequent* to abandonment of her by her husband, had been guilty of infidelity, the court refused to consider such testimony, apparently on the ground of immateriality. I do not think it was immaterial, and it was probably error to refuse to consider it. But I cannot subscribe to the doctrine announced by the majority that if the testimony offered proved the wife's infidelity under the

circumstances of this case, possibly induced or connived at by the defendant, that the trial court because thereof must deny a divorce to either party. In other words, I cannot subscribe to the doctrine stated in its normal form "if both parties have a right to divorce, neither has."

There is nothing in the older statutes of New Mexico nor in our decisions to indicate a declaration of policy that refusing a divorce where both parties are offenders will be the greater deterrent for the prevention of immorality and for the public welfare. Whereas, the introduction by the Legislature of 1933 of "incompatibility," as a cause for divorce, plainly indicates a declaration of policy that the district courts have full power and authority to decree divorces from the bonds of matrimony when the court is satisfied *that the parties can no longer live together.* I have emphasized the last phrase because apparently that is what is meant by incompatibility. Century Dictionary gives, as synonyms of "incompatibility," "unsuitable, discordant, irreconcilable," and defines the term incompatible as "incapable of harmoninzing or agreement. * * * Mutually repelling." Schouler, Marriage, Divorce and Separation, § 1667, is as follows: "1667. Incompatibility. Incompatibility of temper and evidence that a couple can no longer live together harmoniously is no ground for divorce *except in some states* (italics mine) where the cause of inability to live together is not the fault of the plaintiff." As I understand it, "except in some states" is put in parenthetically by the author and New Mexico is one of the exceptions.

In Turner v. Turner, 82 Wash. 518, 144 P. 689, the Supreme Court of Washington decided that where the wife was willing to live with her husband but that the husband refused, and the trial court found "that the parties are wholly incompatible, and that it would be conducive of no good to the parties themselves nor to society at large to compel them to longer recognize the marriage," and granted a divorce, that no error had been committed. In Freeburn v. Freeburn, 107 Wash. 646, 182 P. 620, it was decided: "Where the evidence warranted the trial court in finding that the wife was quarrelsome and impatient with her husband, and that such incompatibility of temperament existed that they could no longer live together, the judgment of divorce for the husband on his cross-complaint was justified."

The power of the court to decree divorce where it is found that the parties are incompatible, i. e., can no longer live together, is inconsistent with the application of the doctrine of recrimination in cases where the court finds in addition to the existence of specific statutory grounds for divorce that the parties can no longer live together. Incompatibility is a condition which may result from causes amounting to statutory grounds for divorce as well as from causes not mentioned as being grounds for divorce. Assuming that the doctrine of complete recrimination at

one time existed in this jurisdiction as a part of divorce law, the 1933 amendment indicates a legislative declaration of policy that such rule must thereafter be relaxed in cases where the court finds that the parties can no longer live together.

In the case at bar, the plaintiff, the wife, so said the trial court, was without fault at the time her husband neglected her by failing to give her support and also abandoned her. In addition to this, the court made a finding as to the great disparity of ages of the parties and that the husband was in his dotage. Under these circumstances, I am not prepared to say that if the court had considered the evidence offered and which was disregarded, and had then decided in the exercise of his judicial discretion that the plaintiff was entitled to a divorce, that the decree of divorce granted to plaintiff would not have been correct. The discretion of the trial court in applying the maxims of equity to the facts of a particular case is not a loose and unfettered discretion, but is subject to review for abuse thereof.

From the fact that the court refused to consider the proffered testimony, it is apparent that he did not exercise the discretion of which I have written.

Therefore, because of the error in disregarding the testimony and failing to consider its effect upon the issues, I concur in the decision.