GENEVIEVE BLACKMAN, appellant, v. RAY D. BLACKMAN, appellee.

No. 47484.

(Reported in 40 N.W. 2d 18)

DECEMBER 13, 1949.

Edmund Scarpino, H. W. Hanson and Waldo F. Wheeler, all of Des Moines, for appellant.

Ralph L. Powers, of Des Moines, for appellee.

MANTZ, J.—Genevieve Blackman brought suit for separate maintenance against her husband, Ray D. Blackman. It was granted with weekly support money for the minor children. Her claim for alimony was not allowed and she has appealed. A brief summary of the pleadings and parts of the evidence will be set forth below.

In her suit for separate maintenance the wife pleads that defendant has been guilty of cruel and inhuman treatment, physical and otherwise; that his conduct is such that it harasses, humiliates and makes her nervous, and endangers her life; that she cannot live with him in peace and comfort; that he is regularly employed but is unwilling to support her or the children; that she is involved in debt in trying to maintain the house, and that defendant refuses to assist her in paying the same. She prays for separate maintenance, support money, alimony, and court expenses, including attorney fees.

Defendant specifically denies the charges made by plaintiff. Briefly he defends on the ground that his wife is now and always has been a troublemaker; that she has a domineering attitude, is suspicious, a constant nagger, to such an extent that he cannot live with her. He alleges that he has contributed to the support of his wife and children so far as possible; that at times he has not been employed steadily and has worked at various odd jobs. Specifically answering plaintiff's charge that he had beaten her with his fists and injured her, he denies such charges or that he at any time inflicted upon her serious injuries, alleging, however, that on several occasions, when driven to desperation by the provocative attitude of plaintiff toward him, he has slapped plaintiff and has been slapped in return. Defendant asks that plaintiff's petition be dismissed.

The testimony of plaintiff and defendant bristles with contradictions and is replete with charges and countercharges, criminations and recriminations. They were married in August 1926. Plaintiff says that she does not want a divorce and that she still loves defendant—all in the face of her pleadings and sworn testimony that during the past he has been brutal, unsociable, a drunkard, and has committed adulterous acts. Defendant emphatically says that he will not live with plaintiff—that her conduct was

such that he was forced to leave her, and that, in effect, she had turned their children against him.

No good purpose would be served by setting out some of the varied, not to say sordid, events of the rather turbulent period of the married life of the parties to this action.

The trial court listened patiently to the evidence—the varied details of the infelicitations and alleged shortcomings aimed by the parties at each other.

The record shows that the parties never have gotten along well together—financial difficulties have been always present. They now live in a rented house and own but a part of the furniture used. The parents of plaintiff live with them and this fact does not add to the harmony of the home. Both plaintiff and defendant are steadily employed, the plaintiff having larger earnings than defendant. It also shows that to this union were born five children, all living with their mother; their ages are twenty, seventeen, fifteen, fourteen and twelve. The oldest, Charles, lives at home, is steadily employed and earns $140 per month; he contributes nothing to the expenses; owns a car, and says, "I use the money that I earn for expenses on my car"; says that he is taking flying lessons and is enthusiastic about it. Plaintiff apparently shares in his enthusiasm and asks nothing from him for board and room. This son has a marked dislike for his father. The other children attend school. Plaintiff states that there are many obligations, mostly for the family, such as food, clothing and medical expense.

While plaintiff charged that defendant was a drunkard, yet the record shows that for ten years he worked as a clothing salesman at the Garfield Clothing Store and twelve years at the old Utica Company, with very little time off during a period of approximately twenty-two years. It shows that at times he has worked at various odd jobs. It also shows that he has contributed various sums to the family support and after he left the home.

The court found the equities were with the plaintiff; granted her a decree for separate maintenance; denied alimony; ordered defendant to contribute $13 per week for the support of the minor children, thereby finding that defendant was unable to contribute a larger amount—such order to stand until further order of the court.

In entering such decree, it is quite evident that the court took into consideration the respective earnings of the parties. The record shows that for the ten-month period after January 1, 1948, plaintiff earned a gross of $1848.58, with "take home" $1737.27, and that for the same period the defendant had a gross earning of $1871.68, and a "take home" of $1688.36. Such finding would indicate that the trial court was trying to do equity between the parties so far as the income of each was concerned. Very likely the ages of the minors were considered along with the earnings of the twenty-year-old son and it might have concluded that inasmuch as the earnings of that minor belong to his parents (no emancipation being shown) at least a portion of it would be used for family expenses.

The suit for separate maintenance does not rest on the statutes authorizing divorce, but is bottomed on the general equitable powers of the court. This was fully set forth and discussed in the early case of Graves v. Graves, 36 Iowa 310, 14 Am. Rep. 525, and has since been followed by many decisions of this court. See also Bartlett v. Bartlett, 214 Iowa 616, 243 N.W. 588; Olds v. Olds, 219 Iowa 1395, 260 N.W. 1, 261 N.W. 488; Avery v. Avery, 236 Iowa 9, 12, 17 N.W. 2d 820, 822. In the last-cited case this court, in discussing the allowance for separate maintenance, said:

"Circumstances which should be taken into consideration in determining the amount of the allowance include the property, income and earning capacity of the husband; the property, income and earning capacity of the wife; the health of the parties; and other elements that enter into the status and welfare of the parties. 42 C.J.S. 252, 253, section 624."

In Shipley v. Shipley, 187 Iowa 1295, 175 N.W. 51, we held that any allowance should be measured by the situation and income of the parties.

The proceedings, being in equity, are here triable de novo. We have examined the record and are of the opinion that the court took into consideration all of the evidence as to the situation of the parties and their respective incomes. The issues raised were purely factual. True, the support allowed for the minors was not large. We do not think the court abused its dis-

cretion in so fixing it. Appellant has cited a number of cases but we do not think they have application in this case. The decree is affirmed.—Affirmed.

All JUSTICES concur.