[Civ. No. 17083.   Second Dist., Div. Three.   Apr. 13, 1950.]

MARY B. NICOLAI, Appellant, v. ALBERT F. NICOLAI, Respondent.

Charles K. Flint and Gene M. Harris for Appellant.

W. P. Butcher and T. A. Twitchell for Respondent.

WOOD, J.—Plaintiff and defendant intermarried in 1935. An interlocutory decree of divorce in favor of plaintiff was entered on July 13, 1940. The parties intermarried again on July 24, 1941, but at that time a final decree of divorce had not been entered. After the second marriage they lived together until October 9, 1947. On October 15, 1947, plaintiff commenced an action for divorce, based upon the second marriage. Defendant answered and filed a cross-complaint for divorce. When the action came on for trial on May 28, 1948, the final decree in the first action had not been entered. Counsel for plaintiff did not know, prior to the day of trial, that the final decree had not been entered. Counsel for defendant had ascertained, the day before the trial, that the final decree had not been entered. The plaintiff and defendant (who had remarried one year and ten days after the interlocutory decree in the first action had been entered) believed

that they were divorced after the expiration of one year from the time the interlocutory decree was granted. When the second action was called for trial, counsel for defendant made a motion that a final decree in the first action be entered *nunc pro tunc* as of July 14, 1941. That motion was granted and the final decree was entered accordingly.

Upon the trial of the second action, the defendant obtained an interlocutory decree of divorce on his cross-complaint.

Plaintiff, after having given notice of appeal in the second action, made a motion that the court order defendant to pay alimony pending the appeal and to pay counsel fees and costs on appeal. The court denied, without prejudice, the motion regarding alimony, and ordered that defendant pay $400 as counsel fees and that he pay the actual costs incurred on appeal.

Plaintiff also made a motion that the court make an order directing the officers of a building and loan association to permit plaintiff or her counsel to inspect any deposit accounts in the association in the name of Alfred Nicolai (defendant's brother). That motion was denied.

Plaintiff filed a notice of appeal in the first action (No. 31861 in the superior court) stating that she appeals from the order therein granting a motion for entry of final decree of divorce *nunc pro tunc* as of July 14, 1941. Plaintiff appeals, in the second action (No. 40425), from (1) the interlocutory judgment of divorce in the second action; (2) the order therein denying her motion for alimony; (3) the order therein granting counsel fees to her; and (4) the order therein denying her motion for inspection of accounts.

■ An order granting a motion to enter a judgment *nunc pro tunc*, being an intermediate ruling of the court, is not appealable. (*Mather* v. *Mather*, 22 Cal.2d 713, 720 [140 P.2d 808].) Plaintiff did not appeal from the final judgment. The court had jurisdiction under the provisions of section 133 of the Civil Code to cause the final decree to be entered *nunc pro tunc*. Said section 133 provides that "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same was not signed, filed or entered, if no appeal has been taken from the interlocutory judgment or motion for a new trial made, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been

given or made by the court if applied for. . . . Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment . . . shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof.''

Since the order granting the motion to enter the final decree *nunc pro tunc* is not appealable and the court had jurisdiction to make the order, and since there is no appeal from the final decree, it is not necessary to determine whether the court properly exercised its discretion in making the order. The attempted appeal from said order should be dismissed.

█ Upon the appeal from the interlocutory judgment of divorce in the second action, plaintiff asserts that the finding that the parties intermarried on July 24, 1941, is not supported by the evidence. Her argument in support of this assertion is that since the final decree in the first divorce action had not been entered the parties were not single persons at the time of the alleged second marriage on July 24, 1941, and since the court erred (according to plaintiff's argument) in entering the final decree in that action, the parties did not marry on July 24, 1941. As above stated, the final decree in the first divorce action was entered *nunc pro tunc* as of July 14, 1941, and there was no appeal from that judgment. It has been established therefore that the parties were single persons on July 24, 1941. The finding that the parties intermarried on said date is supported by the evidence.

█ Plaintiff asserts further that the findings that she was guilty of extreme cruelty, and that defendant was not guilty of extreme cruelty, are not supported by the evidence. The court found the allegations of paragraph V of defendant's cross-complaint were true. In that paragraph the defendant alleged, among other things, that: plaintiff constantly cursed defendant, and on numerous occasions called him vile and abusive names (the names were specifically stated) ; on numerous occasions she threw dishes at him, and on one occasion she threw a chair at him; she clawed his face; she refused to cook meals for him; she threatened to break all the windows in his automobile; she tore up the marriage license and stated ''It doesn't mean a thing''; she always nagged him about money matters; she repeatedly stated that she was ''really

going to clean him this time." The defendant testified that the plaintiff said and did the things alleged in said paragraph; he did not testify that she said she was "really going to clean him this time." Some of the testimony of defendant was corroborated by other witnesses. A witness, called by defendant, testified that plaintiff said that she was "really going to clean him this time." Plaintiff testified that she did curse defendant and call him vile names, but she also testified that when she cursed him and called him those names she was then repeating "right back" to him everything he called her.

The court also found that the allegations of paragraph V of the second amended complaint were untrue. In that paragraph the plaintiff alleged, among other things, that the defendant never gave plaintiff money to buy clothes; he would not permit her to use the automobile; he never took her to a dinner or show; when they went to a certain dance he refused to enter the hall until after midnight so they could gain admission for half price; he continually quarreled with her about money that had been spent for household needs; he refused to pay plaintiff's hospital bill and thereby forced her to borrow money and pay the bill in order to be released from the hospital; he was always cursing plaintiff and calling her vile and abusive names; and every payday he used physical violence upon her. Plaintiff testified that defendant said and did the things alleged therein. Some of her testimony was corroborated by other witnesses.

It is not necessary to state specifically herein the vile names and curse words referred to by the parties. The evidence as to extreme cruelty was conflicting, and the trial judge resolved the conflict in favor of the defendant. In his memorandum of opinion the trial judge stated that the "evidence preponderates overwhelmingly in favor of the defendant." The findings regarding extreme cruelty are supported by the evidence.

Plaintiff asserts also that the court erred in excluding evidence offered by plaintiff to show fraud and undue influence on the part of defendant in inducing plaintiff to execute the property settlement agreements of July 22, 1938, and June 18, 1940. In February, 1938, the parties built a house, which cost $2,800, on land which was the separate property of defendant. (The land was inherited by defendant.) The cost of the house was paid with community funds and with $1,700 of defendant's separate funds. About June 1, 1938, the parties

separated and remained separated about six weeks. About July 20, 1938, the parties became reconciled, and she executed a quitclaim deed in favor of the defendant whereby she quitclaimed any interest she might have in said real property. On July 22, 1938, they entered into a property settlement agreement which stated, among other things, that the real property was defendant's separate property, and that defendant should pay $1,000 to plaintiff in settlement of her claims against the defendant. The parties separated again on June 1, 1940.

The parties entered into a property settlement agreement on June 18, 1940, whereby plaintiff transferred all her interest in certain furniture and an automobile to defendant and the defendant transferred all his interest in certain furniture and an automobile to plaintiff. That agreement also provided that defendant "may pay the wife the said sum of $1,000.00," referred to in the agreement of July 22, 1938, by paying $500 on the execution of said agreement of June 18, 1940, and the balance at the rate of $40 per month; that the plaintiff released the defendant from all obligations to make a will as provided in the agreement of July 22, 1938; that each party released the other from all obligations and claims; and that plaintiff waived any claim for alimony.

Plaintiff commenced an action for divorce on June 26, 1940. She obtained an interlocutory decree of divorce on July 13, 1940, which approved the property settlement agreement of June 18, 1940. One of the recitals in that decree was that said property settlement agreement of June 18, 1940, wherein a complete disposition of all the property of the parties was made, was fair and equitable. There was no appeal from that interlocutory decree, and there was no appeal, as above stated, from the final decree of divorce which was entered *nunc pro tunc*. Plaintiff did not plead fraud or undue influence with respect to the agreement of July 22, 1938, or the agreement of June 18, 1940. She did allege, however, that the community property of the parties consisted of real property (which was the same as that described in said agreements) "and other property the exact nature of which the defendant has concealed from the plaintiff." At the trial herein (second divorce action) plaintiff's counsel, in referring to the reconciliation in 1938, asked the plaintiff as follows: "Under what circumstances did you reconcile?" Counsel for defendant objected to the question upon the ground that the "contract

speaks for itself.'' In reply to the objection counsel for plaintiff stated there was a question ''of undue influence and statements by the husband.'' The judge stated that the action was not one to set aside any agreement. The objection was sustained. It appears that this was the only offer that was made regarding fraud or undue influence. The interlocutory decree, where the agreement of 1940 was approved, became final many years before the present divorce action was tried. That agreement of 1940 referred to certain provisions in the agreement of 1938. The court did not err in sustaining said objection.

Plaintiff also asserts that the finding that the property settlement agreement of June 18, 1940, was still in effect is not supported by the evidence. She argues that her uncontradicted testimony shows that said agreement was rescinded by the parties. In support of her argument she refers to her testimony that after the second marriage she took the furniture back and she returned to the defendant about $600 of the $1,000 which she had received in the settlement, and that the money returned by her was used to pay part of the expenses of drilling a well on the real property. She argues further that the defendant did not introduce any evidence that the property divided between the parties under said agreement was not returned and commingled after the second marriage ceremony. Whether or not there was a rescission by the conduct of the parties was a question of fact for the determination of the trial court. An important factor in the determination of such a question is the demeanor of the witnesses while testifying. The trial judge was not required to find, under the evidence here, that the conduct of the parties effected a rescission of the written agreement which had been approved in the former action. The trial judge, in his written opinion, stated that after observing the demeanor of the plaintiff on the witness stand and in the courtroom he concluded that the remarriage ''was consummated with but one thought in mind —that she would clean'' the defendant. The court did not err in finding that said agreement was still in effect. Plaintiff also asserts that said agreement was rescinded by the remarriage of the parties. That was also a question of fact for the trial court and its finding thereon cannot be disturbed under the evidence here.

Plaintiff also asserts that the findings defining the community property are not supported by the evidence. The court found that the community property consisted of furni-

ture, two automobiles, $1,000 in the possession of plaintiff (which was withdrawn by her from a joint bank account before the separation) and $2,077.22 in the joint bank account (which amount the parties had divided equally between themselves). The court found that the defendant had separate property as follows: $3,647.88 in a building and loan association; $2,500 in a postal savings account; a $5,000 life insurance policy; certain furniture; and certain real property. The portion of the community property awarded to the plaintiff consisted of the furniture in her possession, the automobile in her possession, and $500. The portion of the community property awarded to the defendant consisted of the furniture in his possession and the automobile in his possession. The court also awarded to each party the amount he or she had withdrawn from the bank account. The court also adjudged that the defendant was the sole owner of the real property; that the defendant was the owner of certain oil royalties and that plaintiff had no interest therein. The matter of determining the amounts of community and separate property was also a question of fact for the trial court. The evidence supports the findings upon that issue.

Plaintiff asserts also that the awards of community property are not supported by the evidence. It seems that such property was divided about evenly between the parties. The court was not required, however, to make an even division of the property, since the interlocutory decree was granted to defendant (cross-complainant) upon the ground of extreme cruelty of plaintiff. The evidence supports the award of community property.

■ Plaintiff asserts also that the court erred in finding that a deed, executed by defendant purporting to convey said real property (defendant's separate property) to himself and plaintiff as joint tenants, was procured through fraud of plaintiff. The court found that prior to the signing of the deed the plaintiff fraudulently represented to the defendant that if the defendant would deed said real property to himself and plaintiff as joint tenants, and if she should leave the defendant, she would immediately reconvey the real property to him; that said representation was false and was made without any intention on the part of plaintiff to perform it, and was made to induce defendant to execute said joint tenancy deed; that defendant relied on said representation; and that defendant did not discover the falsity of said representation

until after the separation (which was on Oct. 9, 1947). Defendant testified that plaintiff promised to reconvey the property to him if she left him. As above stated, a witness, called by defendant, testified that plaintiff said that she was really "going to clean" defendant this time. The judge stated in his memorandum opinion, as above shown, that he concluded that plaintiff intended to "clean" the defendant, and that in his opinion the deed was secured by fraud on the part of plaintiff. The evidence was legally sufficient to support said finding.

Plaintiff also asserts that the court erred in finding that the joint tenancy deed was not delivered. In regard to making the joint tenancy deed, defendant testified that plaintiff told him that in case of his death she wanted to be protected so that she would get the real property, that a will did not mean anything, that the property would be his separate property, and if she left him she would deed it back to him. He also testified that he never intended to give up his title to the property; that it was his intention that the deed would be effective only in case he died, and he so advised plaintiff; that he did not deliver the deed to plaintiff; that he made it in an attorney's office where it has been ever since; and that the attorney had it recorded. The attorney testified that he prepared the deed, caused it to be recorded, and has had it in his possession since it was recorded. Plaintiff testified that the deed never was handed to her, that on one occasion the deed was on the kitchen table, that the deed was "folded up," that she did not read it, and she never saw it thereafter. Although the recording of a deed at the request of the grantor creates a presumption of delivery of the deed, that presumption may be rebutted. Whether or not the deed was delivered was a question of fact for the trial court. The evidence was legally sufficient to support said finding.

Upon plaintiff's appeal from the order denying her motion for alimony pending appeal, she contends that the court abused its discretion in denying said motion. The trial judge, in ruling upon said motion, stated that he could not in good conscience order the payment of further alimony. At the time the motion was heard, plaintiff had $600 and she was receiving $25 per month and her board and lodging for services she was rendering as a housekeeper. Since the plaintiff was apprehensive about her ability to continue with such work, the motion was denied without prejudice. The trial judge did not abuse his discretion.

■ Upon plaintiff's appeal from the order granting $400 as counsel fees on appeal, she contends that said amount was not reasonable, and that the court abused its discretion in not allowing a larger sum. This contention is not sustainable.

■ As above stated, plaintiff also appeals from the order denying her motion that the court direct the officers of a building and loan association to permit her or her counsel to inspect any deposit accounts in the name of defendant's brother, Alfred Nicolai. She asserts that the court erred in denying the motion since "it is probable" that defendant had money on deposit there in the name of his brother. Defendant had testified that in 1933, before his marriage, he had placed $1,700 in a savings account in the name of his brother because he (defendant) had been in an automobile accident. The brother was not a party to the action herein. There was no prima facie showing that any account in the building and loan association was that of defendant. The court did not err in denying the motion.

■ Defendant (respondent) asserts that the appeal from the interlocutory judgment of divorce should be dismissed for the reason the appeal was not taken within proper time. The said judgment was entered August 7, 1948. A motion for a new trial, which was made within proper time, was denied October 7, 1948. On March 9, 1949, plaintiff filed a notice stating that on March 14, 1949, she would apply to the trial court for an order directing the clerk to enter and place in the file of said action, *nunc pro tunc* as of October 12, 1948, a copy of the notice of appeal which was filed with the clerk on October 12, 1948, and which notice was lost, misplaced or improperly filed in the office of said clerk. When the motion came on for hearing defendant objected to the hearing on the ground that the court did not have jurisdiction to entertain it for the reason no notice of appeal was filed within the time prescribed by law. It was stipulated that the register of actions and the file in the action did not show that the notice had been filed. It was also stipulated that a copy of a notice of appeal was served on Mr. Twitchell on October 12, 1948. The record shows that a copy of the notice of appeal and notice to prepare clerk's and reporter's transcripts was filed March 16, 1949, *nunc pro tunc* as of October 12, 1948. The record, however, does not show the ruling of the court upon said motion. It is stated in appellant's reply brief that the court made an order on

March 16, 1949, directing that "a copy be placed in the files in place of the lost original Notice of Appeal." The parties have discussed the matter of said motion, in their briefs, on the basis that the motion had been granted. It will be assumed that the court granted the motion. If the original notice of appeal was in fact delivered to the office of the clerk on October 12, 1948, and was lost in said office, the trial court was empowered to order that a copy of the notice be filed and used instead of the original. (Code Civ. Proc., § 1045; and see *Davis* v. *Schneider*, 91 Cal.App. 187 [266 P. 959], and *Knowlton* v. *Mackenzie*, 110 Cal. 183, 189 [42 P. 580], and *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 449, 458 [213 P.2d 11].) The evidence was sufficient to support a finding that the notice was delivered to the office of the clerk on October 12, 1948, and was lost therein. The court was justified in ordering that the copy of the notice of appeal be filed *nunc pro tunc* as of October 12, 1948. Respondent's motion to dismiss the appeal from the interlocutory judgment of divorce should be denied.

The purported appeal from the order, in action No. 31861, granting defendant's motion to enter the final decree of divorce *nunc pro tunc* as of July 14, 1941, is dismissed. The interlocutory judgment of divorce, in action No. 40425, and the order in said action denying plaintiff's motion for alimony pending appeal, and the order in said action granting counsel fees to plaintiff, and the order in said action denying plaintiff's motion for inspection of accounts, are affirmed. Respondent's (defendant's) motion to dismiss the appeal from the interlocutory judgment of divorce is denied.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 8, 1950. Carter, J., voted for a hearing.