[Civ. No. 19597. Second Dist., Div. Two. July 21, 1953.]

SARA LEE KIRSCH, Respondent, v. JOHN HENRY KIRSCH, Appellant.

Charles H. Kent for Appellant.

Woolley & Mewborn and Charlton A. Mewborn for Respondent.

MOORE, P. J.—From an interlocutory decree dissolving the marriage, awarding the custody of two minor children, providing for their support and dividing the community property, defendant appeals. He attacks the amended complaint as an insufficient pleading, asserts the findings and judgment are not supported by the evidence and maintains the insufficiency of the evidence. Inasmuch as the amended complaint is attacked in no particular except as to the allegations of cruelty, the validity of the pleading will be made to appear from the discussion of the findings and the evidence.

The parties were married in October, 1939, and separated in August, 1951. Their life together continued over practically 11 years and 10 months. Their two children are nine and one-half and three years, respectively. Extreme cruelty is alleged as the reason why the marriage must end. In support of her allegations, respondent testified that from the commencement of their married life she undertook to help others and her community as well as her own home, but appellant made fun of her efforts, embarrassed her before the public and in front of his own family and his children; that he called her "the Little Dictator," and "the Little Communist." In the first year she worked in the Girl Scout movement, and thereby served the public. Because she had trained in youth work, she helped in the Y.W.C.A. To such activities appellant objected. When she attended church he derided it and asked her insinuating questions in the presence of the children. He repeatedly ridiculed her cooking and housekeeping; objected to a cake baked in a round pan and often made jest of her frosting, her manner of handling the children, her study of psychology, and kept her so upset and nervous that she broke out with eczema from which she suffered intensely. He objected to attending any social affair requiring an outlay of money; disliked playing golf or bowling with his wife and worried when he found her not busily occupied. He expressed his displeasure at the birth of their daughter—rather than a son; took her on only two vacations in the years of coverture; objected to their going on camping or hunting trips. He made their home in an apartment; objected to building a home as too expensive; would not "go in debt for anything."

She tried to salvage the marriage by requesting him to join her in consulting a "marriage counselor." He objected with the statement: "There aren't any problems I can't work out myself; you don't need any one to work out those problems." He opposed all the activities that interested respondent.

She was miserable from the eczema; her hands were full of pus and she itched all over until she finally found a dermatologist who relieved her. She could not sleep well, was upset, and lost weight.

She was corroborated by her mother, Mrs. Wise, and by Mrs. Morgan. They testified as to the cold and critical attitude of appellant. Mrs. Morgan implored him to "let Sally

alone; don't criticize her; give us all a chance to have a good time.'' She testified that he ''had spoiled practically every family party we had ever had just by that very thing.'' Mrs. Church testified that respondent was a very fine and able worker in the scout organization but after the birth of the daughter, Janet, respondent's health was not good and the eczema condition beset her. Furthermore, appellant testified that his wife's medical problem started ''practically from the time we were married. . . . She went into eczema right after Janet was born. . . . The specialist shocked me right off the chair. . . . It's been $60 to $80 a month for two years. . . . She changed to this brand new doctor . . . and he told me he didn't expect to save her life. And she had this infection . . . this second doctor cured her. . . . And she does have breakouts.''

■ From such evidence the inference of extreme cruelty is fairly deducible. The judgment must be given the benefit of every favorable inference to be drawn from the proof. (*Hinkle* v. *Southern Pac. Co.*, 12 Cal.2d 691, 695 [87 P.2d 349].) ■ Only the evidence most favorable to the judgment together with every inference reasonably to be drawn and every presumption which can fairly be deemed to arise therefrom in support of the prevailing party can be considered. (*Wood* v. *Samaritan Institution, Inc.*, 26 Cal.2d 847, 849 [161 P.2d 556].) ■ The power of the appellate court begins and ends with a determination as to ''whether there is any substantial evidence contradicted or uncontradicted, which will support the conclusion reached by the jury.'' (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

From the narrative of the unfortunate relationship that developed between the parties it is apparent that the family effected by the union of these parties is at an end. Respondent has come into that state of mind which renders it impracticable for her to attempt to live serenely and in comfort with appellant. His very presence at her fireside would awaken bitter memories of the doleful hours his past conduct aroused in her heart. She has an extremely sociable, service-giving nature. While she can find pleasure in domestic chores and in the care of her children, she requires a contact with the throbbing world. She had training for the Girl Scout work prior to her marriage and evidently relishes the associations of, and work in, her church. Appellant will have none of these. He scorns her efforts in the field of social service and

demands that she give the greater part of her time to the home. While a wife and mother owes it to herself, her family and posterity to take care of her home, if her nature requires a social outlet, her husband owes it to her and to the preservation of his family to regard with patience and charity her aspirations to render such service in study, in religious rites, in social service or in any field of endeavor where she may find wholesome happiness in social merriment to such a reasonable degree as will tend to anchor the family life and cause peace and contentment to abide. These considerations are of equal moment with the wrongs complained of and the rights asserted by the litigants in a divorce action. The public interest in domestic infelicities is always an important factor in such a contest. ■ When a marriage fails, the family thereupon ceases to exist; it is no longer a unit, "the purposes of family life are no longer served" and a dissolution should be decreed if statutory requirements therefor are met. (See *De Burgh* v. *De Burgh*, 39 Cal.2d 858, 864 [250 P.2d 598].) Marriage should not be degraded and its purposes frustrated by such decrees as will merely punish the parties and rob their progeny of love and contentment yet at the same time bring no benefit to the state. (*Ibid.*)

The court below found that appellant's violent opposition to the wishes and innocent aspirations of respondent was extreme cruelty, and wisely concluded that she should walk alone and unhindered by appellant (*Keener* v. *Keener*, 18 Cal.2d 445, 448 [116 P.2d 1]) although the latter may not at any time have consciously aimed to be cruel. ■ Conduct that will grieve and pain respondent to an extreme degree might not have disturbed appellant or some women if administered to them under similar circumstances because of their difference in sentiment, education, and innate refinement. (*Speers* v. *Speers*, 105 Cal.App. 254, 255 [287 P. 138].) The record of the evidence taken at the trial is sufficient to convince the impartial mind that appellant's behavior to his wife would be extreme cruelty to a woman of the spirit, ambition and refinement of such a person as Mrs. Kirsch appeared to the court below. (*Speers* v. *Speers*, *supra*, 256.)

Judgment affirmed.

McComb, J., and Fox, J., concurred.