Submitted on remand from Oregon Supreme Court, February 28, 1984, affirmed February 6, reconsideration denied April 5, petition for review denied May 29, 1985 (299 Or 203)

## STEVENSON et al,
*Appellants,*

*v.*

## UNITED STATES NATIONAL BANK OF OREGON,
*Defendant,*

*and*

## STEVENSON,
*Respondent.*

(82-08-18,273; CA A29437)

695 P2d 77

Milo Pope and Roy Kilpatrick, Mt. Vernon, argued the cause for appellants. With Milo Pope on the briefs was Kilpatricks & Pope, Mt. Vernon.

J. Burdette Pratt, Nyssa, argued the cause for respondent. With him on the brief were Clarence H. Higer and Stunz, Fonda, Pratt & Nichols, Nyssa.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs appeal the summary judgment in this declaratory judgment action which determined that decedent's surviving spouse is entitled to share in the estate.[1] We affirm.

On August 29, 1979, decedent, David Earl Stevenson (David), and Alberta Hegwod (Alberta) executed a prenuptial agreement. At that time, David had assets of approximately $550,000; Alberta had assets of approximately $3,000. The agreement provided that the parties could dispose of their property as they wished and that, should the marriage be terminated by death or dissolution, each party would retain the property owned by the party prior to the marriage. David and Alberta were married a day after the agreement was signed. In October, 1980, Alberta sued David for a dissolution of the marriage. In December, 1980, David executed a will, giving all of his property to his children in equal shares. In connection with the pending divorce, Alberta and David entered into a property settlement agreement on February 26, 1981, which gave Alberta some personal property and $9,000 in cash. That agreement, which provided that it superseded all other written or oral agreements relating to the settlement of the parties' property rights, was incorporated in the decree, which became final on May 12, 1981.

In early March, 1982, David and Alberta remarried. On March 23, 1982, David filed a petition to dissolve the second marriage. On April 5, 1982, David was killed by an unknown assailant. After his will was admitted to probate, Alberta filed a petition in the probate proceeding, claiming an interest in the estate as the surviving spouse. As a result of that petition, she was awarded $1,000 per month in spousal support from the assets of the estate. In August, 1982, plaintiffs, the children of David, filed a complaint for declaratory relief in the circuit court, alleging that they were the sole heirs of David by virtue of his December, 1980, will and that the property settlement agreement barred Alberta from receiving

---

[1] Originally, we dismissed this case for lack of jurisdiction. *Stevenson v. U.S. National Bank,* 65 Or App 569, 672 P2d 61 (1983). The Supreme Court reversed, holding that the appeal was from a final judgment and was timely. The case was remanded to us for consideration on the merits. *Stevenson v. U.S. National Bank,* 296 Or 495, 677 P2d 696 (1984).

anything from David's estate. The court granted Alberta's motion for summary judgment, holding that the 1980 will was revoked by the remarriage in March, 1982, that David died intestate and that Alberta was entitled to an intestate share as the surviving spouse.

Plaintiffs contend on appeal that the property settlement agreement relating to the first divorce survived that divorce and the parties' remarriage almost one year later. Both parties have filed lengthy briefs in which they cite many cases and make extensive arguments. Plaintiffs rely primarily on *Swint v. Swint,* 238 Or 367, 395 P2d 114 (1964), and *Swint v. Brugger,* 243 Or 473, 414 P2d 433 (1966). In *Swint v. Swint, supra,* the parties had entered into a property settlement agreement, which was approved by the dissolution court and incorporated in the decree. Shortly after the decree was entered, the wife died. Husband then moved to set aside the decree because of the jurisdictional defect of failing to serve the district attorney as then required by *former* ORS 107.040. The trial court held that both the decree and the property settlement agreement were void. On appeal by the wife's estate, the court held that the decree was void but that, if the estate could prove that the wife had changed her position in reliance on its validity, the husband would be equitably estopped from repudiating the agreement and claiming a greater share of the wife's estate.

The holding of *Swint v. Swint, supra,* was summarized in *Swint v. Brugger, supra:*

"* * * This court held that, while such a divorce would be void if both parties were still alive, the property rights created by the decree could not be reopened after the parties had changed their position in reliance upon the decree and after the death of one of the parties had made it impossible to remedy the defect in the divorce proceeding." 243 Or at 474.

On remand, the trial court found that both parties had changed their positions in reliance on the validity of the decree and the property settlement agreement. 243 Or at 475. Therefore, the husband was estopped to challenge the validity of the agreement. That judgment was not appealed. Instead, the husband asserted his statutory right as a surviving husband in the probate court. In *Swint v. Brugger, supra,* the Supreme Court upheld the probate court's determination that

the disposition of husband's claim in *Swint v. Swint, supra,* was *res judicata* and barred his claims in probate court.

■     Neither of those cases helps plaintiffs. There is no question but that the property settlement agreement was effective in this case and that it determined the parties' interests in property as of the time of their divorce. However, it did not purport to control the parties' property interests after their remarriage, except to the extent that it defined the assets that each party brought to the second marriage.

Plaintiffs also rely on three cases from other jurisdictions, which they state are the only cases they have found "where the parties made a property settlement, got a divorce, reconciled, remarried and litigated the property settlement."

The holding in *Williams v. Williams,* 74 So 2d 582 (Ala 1954), although not clear, appears to be that a property settlement agreement entered into incident to the dissolution of the parties' first marriage can be taken into consideration in determining the rights of the parties following dissolution of their remarriage. The wife had obtained title to the parties' real property under two settlement agreements incident to the first divorce. In the second divorce proceeding the husband claimed part ownership in the property under several theories, one of which was that the remarriage abrogated the earlier property settlement agreement. Although the court did not decide that question, it apparently sanctioned the husband's attempt to prove that he had paid part of the purchase price for the property. However, it affirmed a decree which held that the interests of the parties in the property were not altered by their remarriage and that the wife was the owner of the land, free of any interest of the husband.

In *Day v. Day,* 360 So 2d 1030 (Ct App Ala 1978), the parties were married in 1953, divorced in 1975, remarried the same year and divorced again in 1977. The court was "unable to find any substantial difference in the situation of the parties at the end of the brief second marriage than when they began it." 360 So 2d at 1031. No rights or titles were affected by the second marriage. Therefore the court held that it was not an abuse of discretion for the trial court to fail to award alimony to wife on the second divorce when none had been awarded previously.

In *Nicolai v. Nicolai,* 96 Cal App 2d 951, 216 P2d 913 (1950), the court held that whether a property settlement agreement had been rescinded by the parties' conduct or by their remarriage was a question of fact, which the trial court had decided against the wife. Although it is not entirely clear from the opinion, it appears that the effect of finding that the property settlement agreement had not been rescinded was to determine what property was the separate property of the husband, as opposed to community property subject to division in the divorce. So viewed, that case holds only that a fully executed property settlement agreement followed by divorce is not affected by the remarriage of the parties, unless they rescind it.

We do not find any of those cases to be helpful here. This case involves the application of Oregon statutes to the chronology of events. The prenuptial agreement governed the rights of David and Alberta until the time of the first divorce, at which time it was expressly superseded and replaced by the terms of the property settlement agreement. The prenuptial agreement had no further force and effect once a judgment was entered incorporating the property settlement agreement. The property settlement agreement governed the rights of the parties at the time of the initial divorce, and the parties complied with its terms. At the time that they entered into their second marriage, it had only the possible effect of determining what each party brought into that marriage, but it had no other effect.

■ Under ORS 112.305,[2] David's 1980 will was revoked by his remarriage to Alberta, unless one of the two statutory exceptions is applicable. The parties were in the process of a divorce, and there is no evidence that David contemplated remarriage at the time the will was executed. Nothing in the

---

[2] ORS 112.305 provides:

"A will is revoked by the subsequent marriage of the testator if the testator is survived by his spouse, unless:

"(1) The will evidences an intent that it not be revoked by the subsequent marriage or was drafted under circumstances establishing that it was in contemplation of the marriage; or

"(2) The testator and his spouse entered into a written contract before the marriage that either makes provision for the spouse or provides that the spouse is to have no rights in the estate of the testator."

will indicates any intent that it not be revoked by remarriage. Therefore, the exception in ORS 112.305(1) does not apply. Further, the parties entered into no written agreement prior to the remarriage that would come within the exception to the statutory revocation of a will by marriage. ORS 112.305(2). The remarriage of David and Alberta revoked David's will. Because there was no valid will at the time of David's death, at which time he was survived by a spouse and children, Alberta is entitled to one-half of the net estate. ORS 112.025.[3]

■ Appellant notes that "had David Stevenson lived to conclude his second divorce from Alberta Mae there would have been no property allocation to her that accumulated during that marriage lasting less than all of March 1982." That may be true, but he did not survive. ORS 112.025 does not require that the surviving spouse bring any property to the marriage or that the marriage last for any specific length of time.

Affirmed.

---

[3] ORS 112.025 provides:

"If the decedent leaves a surviving spouse and issue, the surviving spouse shall have a one-half interest in the net intestate estate."