49 P.3d 1265

**In the Matter of the Estate of Jerry Ward Wilder, Deceased.**

**Susan BARNEDT, Petitioner–Appellant,**

v.

**Jewell Robertson WILDER, Respondent.**

No. 27767.

Court of Appeals of Idaho.

June 4, 2002.

Ringert, Clark, Chtd., Boise, for appellant. S. Bryce Farris argued.

Cosho, Humphrey, Greener & Welsh, Boise, for respondent. Steven James Meade argued.

PERRY, Chief Judge.

Susan Barnedt appeals from the district court's order affirming the magistrate's denial of Barnedt's motion to declare that Jewel Robertson Wilder had no right or interest in the estate of Wilder's deceased husband, Jerry Ward Wilder. We affirm.

## I.

## BACKGROUND

Susan and Jerry were divorced in 1985. In 1986, Jerry wrote a holographic will naming Susan as the personal representative of his estate. Jewel and Jerry were married in 1998. On May 24, 1999, Jewel and Jerry entered into a property settlement agreement during divorce proceedings. The agreement provided for the division of property and debts between the parties. In addition, paragraph seven of the agreement stated:

> Subject to the provisions of this Agreement, each of the parties hereto may in any way dispose of his or her property of whatever nature, real or personal; and the parties hereto, each for himself and herself, respectively, and for the respective heirs, legal representatives, executors and administrators and assigns, hereby waives any right of election which he or she may have or hereafter acquire regarding the estate of the other, or any right to take against any last will and testament of the other, whether heretofore or hereafter executed, or as may now or hereafter be provided for in any law of the State of Idaho or any other state or territory of the United States or any foreign country, and hereby renounces and releases all interest, right or claim that he or she now has or might otherwise have against the other, under or by virtue of the laws of any state or country.

On June 2, 1999, the magistrate entered a decree of divorce. The property settlement agreement was merged into and made a part of the decree. On July 31, 1999, Jewel and Jerry remarried. Divorce proceedings were again initiated. The divorce proceedings were pending when Jerry died on September 1, 2000.

Probate proceedings were commenced. The 1986 holographic will was admitted to probate, and Susan was appointed personal representative of the estate. Jewel filed a petition for family allowance pursuant to I.C. §§ 15–2–403 and –404. Susan thereafter filed a motion to declare that Jewel had no right or interest in the estate. In support of

her motion, Susan attached a copy of the 1999 divorce decree and the property settlement agreement. Susan argued that paragraph seven of the settlement agreement waived any and all rights or interest that Jewel may have in the estate. Jewel argued that the decree and settlement agreement were nullified by the subsequent remarriage. Following a hearing, the magistrate denied Susan's motion. The magistrate held that the settlement agreement was executed in contemplation of the then-pending divorce and not in contemplation of the later remarriage. The magistrate concluded that once Jewel and Jerry remarried, the settlement agreement had no effect in the probate matter and, instead, only served to divide and confirm the separate property of Jewel and Jerry at the time of the divorce. The magistrate thereafter issued an I.R.C.P. Rule 54(b) certificate of final judgment. Susan appealed to the district court, which affirmed the magistrate. Susan again appeals.

## II.

## STANDARD OF REVIEW

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988). Our standard for reviewing a trial court's findings and conclusions is to determine whether the findings of fact are supported by substantial, competent evidence, and to determine whether the trial court properly applied the law to the facts as found. *Tri Circle, Inc., v. Brugger Corp.,* 121 Idaho 950, 954, 829 P.2d 540, 544 (Ct.App.1992). Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet,* 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992).

## III.

## ANALYSIS

Susan argues that the property settlement agreement was a binding contract between the parties that should not be set aside because the parties chose to remarry. Susan contends that the magistrate erred when it concluded that the settlement agreement was not executed in contemplation of remarriage. In support of this contention, Susan cites to the portion of paragraph seven of the agreement stating that each party "hereby waives any right of election which he or she may have or hereafter acquire regarding the estate of the other." Susan argues that the word "hereafter" indicates that the parties did contemplate future events, including the possibility of a remarriage between the parties. Susan asserts that under *Acre v. Koenig,* 89 Idaho 342, 404 P.2d 621 (1965), renewed cohabitation of the parties is not enough to terminate a property settlement agreement. She contends that *Acre* stands for the proposition that a property settlement agreement remains in effect until the parties agree to terminate it.

*Acre* involved a husband and wife who separated and executed a written property settlement agreement. The husband and wife subsequently reconciled and remained married until the husband died. Probate proceedings were commenced, and the order settling the estate recognized certain farm property as having been the separate property of the husband and denied the wife any interest in the property. On appeal, the wife argued that the terms of the property settlement were abrogated by the parties subsequent reconciliation. The Supreme Court disagreed, holding that a property settlement agreement, particularly as to its executed provisions, is not abrogated by reconciliation and renewed cohabitation alone, but instead when the parties agree that the settlement be terminated. *Id.* at 347, 404 P.2d at 624.

We conclude that the facts of the present case differ from those in *Acre.* First, the parties in this case executed the property settlement agreement and then proceeded with the divorce, merging the settlement agreement into the divorce decree. Second, the parties in this case terminated the first marriage contract and later remarried, rather than reconciling within the confines of the first marriage contract. In light of these differences, *Acre* does not control under the facts of this case.

Susan also cites this Court to several cases from other jurisdictions, which she argues hold that a property settlement agreement is not nullified by a subsequent remarriage between the parties. *See Williams v. Williams,* 261 Ala. 328, 74 So.2d 582 (1954); *Day v. Day,* 360 So.2d 1030 (Ala.Civ.App. 1978); *Nicolai v. Nicolai,* 96 Cal.App.2d 951, 216 P.2d 913 (Dist.Ct.App.1950); *Vaccarello v. Vaccarello,* 563 Pa. 93, 757 A.2d 909 (2000). However, we conclude that the cases cited by Susan are distinguishable. *Williams, Day,* and *Nicolai* each involved couples who had married, divorced and remarried. During the second divorce each involved a challenge to the property settlement agreement from the first divorce. It is true that in all three cases the respective courts concluded that the settlements were not abrogated by the subsequent remarriage. But Susan fails to acknowledge the differences between those three cases and the present case.

The litigants in *Williams, Day,* and *Nicolai* sought to nullify the property settlement in an effort to essentially relitigate the property division from the first divorce. The courts held that the property settlement agreements had the effect of determining the nature and extent of the property brought into the subsequent marriage. The appellants in those cases argued that the settlement agreement should be declared nullified or rescinded, thus returning the status of the couple's property to what it was prior to the first divorce. Those situations are considerably different from that in this case, where Susan seeks to declare that language in the first divorce decree had the effect of waiving Jewel's rights as surviving spouse in an estate proceeding as a result of a subsequent marriage.

Finally, *Vaccarello* is distinguishable because it involved the effect of a subsequent reconciliation on a separation and property settlement agreement. As previously mentioned, the present case does not involve a separation and reconciliation prior to divorce.

█ In this case, the express language of the 1999 divorce decree provided that the settlement agreement be merged into the decree. The settlement agreement ceased to exist separate and apart from the decree.

Once the decree was entered, either party desiring to enforce the terms of the settlement agreement must enforce the decree and not the agreement itself. *See* 24A Am.Jur.2d *Divorce and Separation* § 1148 (1998). Thus, Susan's motion in this case was one to enforce the terms of the divorce decree.

█ Upon the remarriage to each other of parties to a divorce action, the prior divorce decree becomes unenforceable as between those two parties. *Parks v. Parks,* 258 Ill.App.3d 479, 196 Ill.Dec. 574, 630 N.E.2d 509, 511 (1994). *Parks* involved a wife, who during the second divorce action, sought to enforce the alimony provisions of the prior divorce decree. On appeal, the Illinois Court of Appeals held that, to the extent the prior divorce decree had been fully complied with, it had the full force and effect of any other judgment rendered by a court of competent jurisdiction. However, with respect to provisions of the divorce decree which had not been fully executed, upon remarriage of the parties, no action may be brought to enforce those provisions. *Id.* at 513. Therefore, an unexecuted or incomplete property settlement cannot be enforced once the parties remarry each other. *Id.*

In a case factually similar to the one currently before us, the Oregon Court of Appeals held that a property settlement agreement from the first divorce did not terminate the wife's interest in her deceased husband's estate after a subsequent remarriage. *See Stevenson v. U.S. Nat'l Bank of Oregon,* 72 Or.App. 39, 695 P.2d 77 (1985). In *Stevenson,* the husband and wife executed a property settlement agreement at the time of their first divorce. Following the divorce, the husband executed a will leaving all of his property to his children. The parties subsequently remarried. The husband commenced a second divorce proceeding shortly after the remarriage, but died before the second divorce was finalized. During the probate proceeding, the wife filed a petition, claiming an interest in the husband's estate as the surviving spouse. The estate contested the petition, arguing that the property settlement agreement from the first divorce survived that divorce and the parties' remarriage.

The Oregon Court of Appeals disagreed, stating:

> There is no question but that the property settlement agreement was effective in this case and that it determined the parties' interests in property as of the time of their divorce. However, it did not purport to control the parties' property interests after their remarriage, except to the extent that it defined the assets that each party brought to the second marriage.

*Id.* at 79.

■ In this case, the first divorce decree anticipated and provided for a situation where two previously married parties resumed their status as single people living apart. When Jewel and Jerry remarried, they created a new marital contract that was repugnant to the prior decree. At that time, the first decree ceased to be enforceable between the parties. The first decree only served to define the property rights of the parties at the time of their remarriage. We are unpersuaded by Susan's argument that the law should require that, upon remarriage, the parties must sign another document terminating the property settlement agreement.

Our decision today is also consistent with the well-recognized public policy relating to marriage. The family is the basic unit of our society—the center of the personal affections that ennoble and enrich human life. *Howay v. Howay,* 74 Idaho 492, 499, 264 P.2d 691, 696 (1953). Since the family is the core of our society, the law seeks to foster and preserve marriage. *Id.*

■ Susan also argues that the property settlement agreement acts as a waiver and renunciation of Jewel's interest in the estate, pursuant to I.C. § 15–2–208. That section states, in pertinent part:

> The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement or waiver signed by the party waiving after fair disclosure.

The language of this section states that the surviving spouse may waive his or her rights in the estate by signing an agreement waiving those rights after full disclosure. Upon our review of the record in this case, we conclude that Jewel did not sign the property settlement agreement in contemplation of the parties' remarriage and, therefore, did not sign it after full disclosure. In this case, there is no evidence that, at the time the parties executed the property settlement agreement, they contemplated they would remarry once the first divorce was final. Therefore, Jewel was not contemplating that she would be waiving any right she had to Jerry's estate as a surviving spouse if they remarried.

In addition, the effect of a divorce on one's status as a surviving spouse is addressed in I.C. § 15–2–802(a), which states:

> A person who is divorced from the decedent or whose marriage to the decedent has been annulled is not a surviving spouse *unless, by virtue of a subsequent marriage,* he is married to the decedent at the time of death. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section.

(Emphasis added.). Under the terms of the Idaho Code, Jewel was a surviving spouse by virtue of her remarriage following the divorce. For the foregoing reasons, we conclude that the magistrate did not err in denying Susan's motion.

■ Jewel requests an award of attorney fees pursuant to I.C. § 12–121 and I.A.R. 41. She contends the magistrate's and district court's opinions in this case were well-founded in logic and reason. Jewel argues that in light of the reasoning of those opinions, Susan's appeal to this Court was brought frivolously. Attorney fees are justified under these provisions where the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1); *Priest v. Landon,* 135 Idaho 898, 902, 26 P.3d 1235, 1239 (Ct.App.2001). We conclude that such a basis for an award has not been demonstrated by Jewel. Therefore, no attorney fees are awarded on appeal.

**420**

## IV.

## CONCLUSION

The property settlement agreement executed by the parties in contemplation of their first divorce was merged into the divorce decree and ceased to exist on its own. That divorce decree ceased to be effective when the parties subsequently remarried. Furthermore, because the settlement agreement was not executed in contemplation of the parties' remarriage, it does not constitute a waiver of the surviving spouse's interest in the estate. Therefore, we conclude that the magistrate did not err in denying Susan's motion to declare that Jewel had no right or interest in the estate. We affirm the district court's decision, upholding the magistrate's order denying Susan's motion. Costs, but not attorney fees, on appeal are awarded to respondent, Jewell Robertson Wilder.

Judge GUTIERRREZ and Judge Pro Tem HART, concur.